OPINION BY JUSTICE CLEO E. POWELL
 

 In this appeal, we consider whether Code § 56-49.01(A) allows a natural gas company to gain access to private property for the purpose of conducting surveys and other activities that are only necessary for the selection of the most advantageous route. We further consider whether the trial court in this case misapplied Code § 56-49.01 and, if so, whether a natural gas company's subsequent entry onto the property to conduct activities authorized by the trial court results in an illegal taking of private property without compensation under Article I, § 11 of the Constitution of Virginia.
 

 I. BACKGROUND
 

 Atlantic Coast Pipeline, LLC ("ACP") is a limited liability company organized under the laws of the State of Delaware. It was organized for the purpose of "operating as a natural gas company as defined by 15 U.S.C. § 717a."
 
 [1]
 
 As such, ACP is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act,
 
 15 U.S.C. § 717
 

 et seq.
 

 Presently, ACP is engaged in the regulatory approval process to build a natural gas pipeline that would extend from West Virginia, through the Commonwealth, to North Carolina. As part of this process, ACP sought to conduct surveys, tests, appraisals, and other examinations on the properties located along its proposed route. William Barr, Melissa Barr, Mary J. Hoffman, Nancy Holstein, Hazel H. Rhames, Trustee and Joseph L. Rhames, Trustee (collectively, the "landowners") own or are trustees for real properties along this proposed route.
 

 On March 6, 2015, ACP mailed the landowners certified letters seeking permission to enter their properties to conduct preliminary surveys and other activities. When the landowners withheld their consent, ACP sent notices of intent to enter their properties pursuant to Code § 56-49.01. ACP then filed petitions for declaratory judgment against the landowners, seeking an order affirming ACP's authority to enter their properties "for the limited purposes defined in Va. Code § 56-49.01."
 

 The landowners demurred, asserting that (1) the allegations in ACP's petition "fail to meet the pre-entry requirements of Va. Code § 56-49.01 ;" (2) the activities authorized by Code § 56-49.01 are "vague and overbroad" and constitute a taking of private property that cannot be authorized by the legislature because such a taking violates the Fifth Amendment of the United States Constitution and Article I, § 11 of the Constitution of Virginia ; and (3) ACP is not a Virginia public service corporation and cannot exercise the power of eminent domain under Code § 56-49. After considering the parties' arguments, the trial court overruled the demurrers related
 to the landowners' constitutional arguments. In its ruling, the trial court explained that entry under Code § 56-49.01 was not an unconstitutional taking because the statute did not provide ACP with an unlimited right of entry with regard to date, scope or duration. The trial court further noted that activities ACP sought to perform were not for a private use, as the transmission of natural gas serves a public purpose.
 
 See
 
 Code § 56-605 ; 15 U.S.C. 717(A). However, the trial court found that ACP's notices of intent to enter were deficient under Code § 56-49.01(A) as they did not indicate the specific dates that ACP would enter the properties. Therefore, the trial court sustained the landowners' demurrer without prejudice on that limited basis.
 
 [2]
 

 On May 31, 2016, ACP filed its amended petitions for declaratory judgment. In its amended petitions, ACP acknowledged that it had not sent a new notice of intent to enter. However, ACP alleged that a new notice of intent to enter would be sent prior to entry. As an exhibit to its amended petitions, ACP included a template of its new notice.
 

 The landowners again demurred, arguing that the amended petitions "fail to establish that ACP is entitled to invoke the statutory powers for which it seeks entry of a declaratory order" because ACP's amended petition did not allege that the activities were necessary to both satisfy regulatory requirements and to select the most advantageous route. According to the landowners, Code § 56-49.01 only permits entry to conduct activities for the purpose of satisfying both purposes. Additionally, the landowners asserted that the amended petitions failed to state an adequate claim for declaratory relief because, by only including a template of the new notice of intent to enter, ACP was seeking an advisory opinion. The trial court overruled the demurrers with regard to the statutory construction issue, but sustained the demurrers on the basis that the amended petitions did not state an adequate claim for declaratory relief. In its order sustaining the demurrer, the trial court granted ACP leave to file a second amended petition.
 

 On December 6, 2016, ACP sent the landowners new notices of intent to enter. These notices indicated the various activities that ACP intended to perform and specified the date ranges that ACP intended to enter the properties to conduct these activities. The notices indicated that, due to the nature of the activities, two of them would take place approximately four months after the initial entry. ACP provided a specific date range that these activities would be carried out as well.
 

 The following day, on December 7, 2016, ACP filed its second amended petition for declaratory judgment. The landowners demurred, again arguing that the amended petition failed to state a claim under Code § 56-49.01 because ACP only alleged that the activities were for the purpose of selecting the most advantageous route. Additionally, the landowners' asserted that the notices of intent to enter were statutorily deficient under Code § 56-49.01 because the notices provided a range of dates upon which entry would occur. The trial court overruled the demurrers. The landowners subsequently filed responsive pleadings to ACP's petitions and the case proceeded to trial.
 

 At trial, ACP presented evidence that demonstrated its need to conduct activities in order to determine the most advantageous route for the pipeline. After ACP had presented its evidence, the landowners moved to strike, noting that Code § 56-49.01(A) permits activities that are necessary for two reasons: to both satisfy regulatory requirements and to select the most advantageous route. As these provisions are separated by the word "and," the landowners assert that these provisions must be read in the conjunctive. Therefore, according to the landowners, because ACP failed to present any evidence that the activities were necessary to satisfy any regulatory requirements, its petitions must fail. ACP argued that proper construction of the statute requires that the "and" separating the two provision be construed as
 disjunctive, not conjunctive. After considering the parties' arguments, the trial court agreed with ACP, ruling that construing the operative language as disjunctive was the more logical reading of the statute. The trial court then granted ACP permission to enter the landowners' properties to conduct the necessary activities.
 

 The landowners appeal.
 

 II. ANALYSIS
 

 In their appeal, the landowners raise two issues. They first assert that the trial court erred in construing portions of Code § 56-49.01(A) in the disjunctive, because the statute is written in the conjunctive. They also argue that by relying on improper facts and allowing ACP to conduct activities that are outside of the scope of the statute, the trial court misapplied Code § 56-49.01. According to the landowners, as a result of the trial court's misapplication of the statute, ACP's entry onto their property was outside the scope of the statute and thus amounted to an illegal taking of private property without compensation, in violation of Article I, Section 11 of the Constitution of Virginia.
 

 A. Code § 56-49.01(A)
 

 In their first assignment of error, the landowners take issue with the trial court's construction of Code § 56-49.01(A). Specifically, the landowners argue that the trial court erred by construing the "and" separating the provisions delineated by romanettes (i) and (ii) in the statute as disjunctive rather than conjunctive. The landowners insist that, the word "and," as used in this portion of the statute, must be read in the conjunctive. According to the landowners, the proper construction of the statute requires ACP to prove that its activities were necessary both "to satisfy any regulatory requirements" and "for the selection of the most advantageous location or route, the improvement or straightening of its line or works, changes of location or construction, or providing additional facilities" (collectively, "route selection"). We disagree.
 

 "Issues of statutory construction are questions of law which we review de novo."
 
 Commonwealth v. Amos
 
 ,
 
 287 Va. 301
 
 , 305,
 
 754 S.E.2d 304
 
 , 306 (2014). When interpreting a statute, our goal is to " 'ascertain and give effect to the intention of the legislature,' which is usually self-evident from the statutory language."
 
 Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv., Inc.
 
 ,
 
 271 Va. 304
 
 , 309,
 
 626 S.E.2d 436
 
 , 438 (2006) (quoting
 
 Chase v. DaimlerChrysler Corp.
 
 ,
 
 266 Va. 544
 
 , 547,
 
 587 S.E.2d 521
 
 , 522 (2003) ). Moreover, "whenever it is necessary to effectuate the obvious intention of the legislature, disjunctive words may be construed as conjunctive, and vice versa."
 
 South East Public Service Corp. v. Commonwealth,
 

 165 Va. 116
 
 , 122,
 
 181 S.E. 448
 
 , 450 (1935).
 
 [3]
 

 Our analysis begins by noting that, the privilege to enter another's property for certain, limited purposes has its origins in the common law.
 
 Palmer v. Atl. Coast Pipeline, LLC
 
 ,
 
 293 Va. 573
 
 , 581,
 
 801 S.E.2d 414
 
 , 418 (2017). Additionally, a duty or authority that has been imposed or created by the legislature also "carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is reasonably necessary to such performance or exercise, if, but only if, all the requirements of the enactment are fulfilled." Restatement of Torts § 211. So long as the duty or authority to which the privilege is attached is conferred upon the actor, the status of the actor as a public official or private individual is immaterial.
 

 Id.
 

 at cmt. d.
 

 Here, the requisite legislative authority is found in Code § 56-49.01(A), which states, in relevant part:
 

 Any firm, corporation, company, or partnership, organized for the bona fide purpose of operating as a natural gas company as defined in 15 U.S.C. § 717a, as amended, may make such examinations, tests, hand auger borings, appraisals, and surveys for its proposed line or location of its works as are necessary (i) to satisfy any regulatory requirements
 
 and
 
 (ii) for the selection of the most advantageous location or route, the improvement or straightening of its line or works, changes of location or construction, or providing additional facilities, and for such purposes, by its duly authorized officers, agents, or employees, may enter upon any property without the written permission of its owner if (a) the natural gas company has requested the owner's permission to inspect the property as provided in subsection B, (b) the owner's written permission is not received prior to the date entry is proposed, and (c) the natural gas company has given the owner notice of intent to enter as provided in subsection C.
 

 (Emphasis added.)
 

 Looking next to the legislative intent behind Code § 56-49.01(A), we find that it is obvious on the face of the statute: to grant natural gas companies access to private property for the purpose of conducting certain activities related to the possible construction of a natural gas pipeline.
 
 See
 

 Palmer
 
 ,
 
 293 Va. at 583
 
 ,
 
 801 S.E.2d at 419
 
 (holding that Code § 56-49.01 provides "an entry-for-survey privilege" to natural gas companies applying for a FERC Certificate of Public Convenience and Necessity).
 
 [4]
 
 Moreover, in
 
 Palmer
 
 , we explained that
 

 Code § 56-49.01 applies to "[a]ny" such "corporation" that fits within 15 U.S.C. § 717a 's definition of a "natural gas company." That is, the corporation must be "engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale."
 
 [5]
 

 Id.
 
 at 578-79,
 
 801 S.E.2d at 417
 
 .
 

 As it is undisputed that ACP meets the definition of a natural gas company under 15 U.S.C. § 717a, the General Assembly has extended the privilege to enter land in the possession of another, provided that such entry falls within the scope of the authority granted by the legislature.
 

 The scope of the authority granted by the legislature requires us to examine the activities that the statute permits natural gas companies conduct. Here, the determination of which activities to perform is left to the natural gas companies, as demonstrated by the fact that the inclusive list of activities is preceded by the auxiliary verb "may."
 
 See
 

 Chesapeake & O. Ry. Co. v. Pulliam
 
 ,
 
 185 Va. 908
 
 , 916,
 
 41 S.E.2d 54
 
 , 58 (1947) ("The word 'may' is prima facie permissive, importing discretion."). However, this discretion is not unlimited. By the plain language of the statute, a natural gas company may only conduct those activities that "are necessary (i) to satisfy any regulatory requirements
 
 and
 
 (ii) for the selection of the most advantageous location or route, the improvement or straightening of its line or works, changes of location or construction, or providing additional facilities." Code § 56-49.01(A).
 

 The General Assembly's use of the present indicative verb "are" preceding the word "necessary" is telling. It indicates that the activities the natural gas company seeks to conduct must be presently necessary as opposed to necessary at some future time. Had the General Assembly intended to allow activities based on future necessity, it would have used the future indicative verb "will be."
 

 Viewed through this prism, it is apparent that the language at issue must be read in the disjunctive. If the "and" separating the enumerated provisions were read in the conjunctive, natural gas companies could only conduct those activities necessary to satisfy both provisions. Yet, it is clear that not all activities necessary to satisfy regulatory requirements are also necessary for the selection of the most advantageous route, etc., and vice versa. Moreover, as the landowners have correctly pointed out, the need to satisfy regulatory requirements occurs at an entirely different time from the need to select and/or improve the pipeline and its route.
 
 [6]
 
 Therefore, the few activities that are necessary to satisfy both provisions would not be necessary at the same time. Thus, by inextricably coupling the two enumerated provisions, any discretion granted to natural gas companies would be taken away for no discernible purpose.
 

 We further note that reading this language in the conjunctive would render certain
 portions of the statute meaningless. For example, the second enumerated provision is comprised of four subparts which are written in the disjunctive. An activity may be deemed necessary under the second enumerated provision if that activity involves: (1) "the selection of the most advantageous location or route;" (2) "the improvement or straightening of [a] line or works;" (3) changing the location or construction of a pipeline; or (4) "providing additional facilities." Code § 56-49.01(A). Logically, the improvement or straightening of a pipeline would occur after the pipeline has been built, as would changing the location of the pipeline and, to some extent, the construction of additional facilities. In other words, these activities would be conducted after, and independent of, the satisfaction of any regulatory requirements required to obtain the certificate. Thus, requiring that the activities of a natural gas company be necessary both for satisfying regulatory requirements and the several post-construction considerations would be completely unworkable. It is evident that the word "and" was used in this portion of the statute to indicate that a natural gas company may undertake activities necessary to address either of the enumerated provisions.
 
 [7]
 

 We must also consider the nature of the enumerated provisions. The first enumerated provision is entirely objective, because an activity either is or is not necessary for the satisfaction of a regulatory requirement. The second enumerated provision, however, has a significant subjective component, which is eviscerated if mandatorily combined with the first enumerated provision. The second enumerated provision provides natural gas companies with access to conduct those activities that are "necessary ... for the selection of the
 
 most advantageous
 
 location or route ...." Code § 56-49.01(A) (emphasis added). There is no set of universal factors that determine what makes one route or location more advantageous than another. Thus, the General Assembly has implicitly granted natural gas companies some discretion in determining which factors to weigh in selecting the most advantageous route. Similarly, there is no universal activity that would provide all of the necessary information to properly weigh each potential factor. Therefore, by granting natural gas companies the discretion to determine what makes one route or location more advantageous than another, the General Assembly has also implicitly granted natural gas companies the discretion to choose which activities are necessary to make such a determination, which is not limited to minimal federal regulatory requirements.
 

 Reading the "and" separating these provisions in the conjunctive effectively eliminates this discretion, as a natural gas company would only be permitted to conduct those activities that are necessary to satisfy both provisions. The factors that a natural gas company could weigh in selecting the most advantageous route or improving the existing route would be limited to only those factors that are also necessary to satisfy the regulatory requirements. Such a construction of the statute would effectively eliminate any differentiation in the two enumerated provisions.
 

 While not dispositive, our determination on this issue is further supported by the unique nature of Code § 56-49.01(A). Specifically, we cannot overlook the fact that, within the first sentence of this statute, the General Assembly has unequivocally used the word "and" in both the conjunctive and the disjunctive. Where the General Assembly has intended to permit the exercise of some level of discretion in this statute, it uses the word "and" in the disjunctive. Most notably, the "and" used in conjunction with the activities that may be performed is obviously written in the disjunctive. To interpret this "and" in the conjunctive would mean that a natural gas company could not gain access to the property to conduct a simple survey without first establishing that it was necessary to also conduct
 other examinations, tests, hand auger borings and appraisals.
 

 In contrast, where the General Assembly has intended to foreclose any exercise of discretion in this statute, it uses the word "and" in the conjunctive, such as in the mandatory prerequisites that a natural gas company must perform before it can enter the property without the landowners' permission.
 

 Id.
 

 (providing that employees of a natural gas company "may enter upon any property without the written permission of its owner if (a) the natural gas company has requested the owner's permission to inspect the property, ... (b) the owner's written permission is not received prior to the date entry is proposed,
 
 and
 
 (c) the natural gas company has given the owner notice of intent to enter") (emphasis added). Only after all three steps have been completed successfully is entry permitted.
 
 See generally
 

 Chaffins v. Atlantic Coast Pipeline, LLC
 
 ,
 
 293 Va. 564
 
 , 569,
 
 801 S.E.2d 189
 
 , 191 (2017).
 

 The fact that the proper application of the second enumerated factor involves the exercise of discretion by the natural gas company indicates, at least in the context of this statute, that the "and" must be construed as disjunctive, not conjunctive.
 

 When the statute is considered in light of the underlying legislative intent, it is apparent that we must interpret the language at issue in the disjunctive. Any other construction would be counterproductive to the legislature's clear intent. Accordingly, the trial court did not err in its construction of Code § 56-49.01(A).
 

 B. Unconstitutional Taking
 

 The landowners next argue that the trial court failed to properly apply Code § 56-49.01 and, as a result, ACP's entry onto their properties amounts to an unconstitutional taking under Article I, § 11 of the Constitution of Virginia. The landowners have explicitly stated that they are not challenging the facial constitutionality of the statute,
 
 see
 
 Oral Argument Audio at 9:56 to 10:07 (stating that they (the landowners) were "not here arguing today that [ Code §] 56-49.01 is unconstitutional on its face"); rather, their argument is expressly limited to whether the trial court improperly applied the statute and whether such improper application would result in a violation of Article I, § 11 of the Constitution of Virginia.
 

 In arguing that the trial court improperly applied Code § 56-49.01, the landowners assert that the trial court relied on improper facts in overruling their demurrers. Alternatively, the landowners claim that the trial court improperly allowed ACP to rely on the statute to conduct activities that were not permitted by Code § 56-49.01. Along these same lines, the landowners take issue with the duration of access to the properties that the trial court deemed permissible under the statute.
 

 1. Improper Facts
 

 Addressing first the landowners' claims that the trial court relied on improper facts in deciding the landowners' demurrer, we note that the argument they raise revolves around the differences between ACP's allegations in its initial petition and those it made in its subsequent petitions. We note, however, that the landowners have failed to provide any citation in the record where this issue was raised to the trial court.
 
 See
 
 Rules 5:17(c)(1) and 5:27(c) (requiring an exact reference to where the alleged error has been preserved for appeal). In their petition for appeal and their opening brief, the landowners cite only to their initial demurrer and the trial court's ruling on that demurrer. This issue was clearly not preserved at either of these locations, as there were no discrepancies between the petitions until ACP filed its amended petitions. Therefore, the issue could not have been raised to the trial court until after the amended petitions were filed.
 

 Moreover, a review of the entire record fails to reveal any indication that this issue was ever brought to the attention of the trial court. Rule 5:25 states that "[n]o ruling of the trial court ... will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." As it does not appear that this issue was ever brought to the trial court's attention, we hold it is not preserved for appeal.
 

 2. Activities Beyond the Scope of Code § 56-49.01
 

 The landowners next argue that the trial court permitted ACP to conduct activities that were not allowed by Code § 56-49.01. In making this argument, the landowners rely on a letter dated March 6, 2015, that ACP sent to the landowners and included in its petition as an attachment. The March 6, 2015 letter includes an outline of the survey process, which indicates that the process will include digging "test areas approximately 1.5 feet wide x 1.5 feet deep, every 50 feet or so along the proposed pipeline route;" collecting, cataloging and removal of "any items of cultural interest;" and clearing a path to see and walk. According to the landowners, "[t]hese activities bear no resemblance to the activities allowed by Code § 56-49.01."
 

 The landowners' reliance on the March 6, 2015 letter is misplaced. Notably, the March 6, 2015 letter represented ACP's request for permission to enter the property. In other words, the March 6, 2015 letter was an attempt by ACP to get the landowners' permission to conduct these activities; it was not a statement of the activities that would be conducted if entry was granted under Code § 56-49.01. Therefore, our analysis is not concerned with any of the activities described in the March 6, 2015 letter.
 

 Instead, we look to ACP's notice of intent to enter, dated December 6, 2016, which it sent after the landowners rejected its initial request for entry. The December 6, 2016 notice of intent to enter did not provide for "test areas approximately 1.5 feet wide x 1.5 feet deep, every 50 feet or so along the proposed pipeline route;" rather, ACP indicated that "small, shallow holes may be dug, which will be promptly refilled and repaired." We fail to find any meaningful distinction between the small, shallow holes that ACP sought to dig from "hand auger borings," which are expressly permitted under the statute. Similarly, the landowners fail to explain how clearing brush as part of the surveying process is a violation of the statute, when the statute allows ACP to conduct a survey. With regard to the disposition of any items of cultural significance that may be found, we note that December 6, 2016 letter explicitly disavows ACP's previous position providing for the removal of such items. Instead, the letter stated that items of cultural or historical significance would be "immediately catalogued onsite and delivered" to the landowner. It is unclear how merely cataloguing and delivering these items to the landowners could be considered a constitutional violation. Certainly such actions could not be considered a taking, as the artifacts are to be turned over to the landowners.
 
 [8]
 
 Thus, we cannot say that the trial court permitted ACP to conduct any activities that were outside of the scope of Code § 56-49.01.
 

 3. Use of Multiple Date Ranges Under Code § 56-49.01
 

 We also find no merit in the landowners' final argument that Code § 56-49.01 did not permit ACP to provide multiple date ranges for when it would conduct its activities. This Court has already addressed this argument, albeit from a slightly different perspective. In
 
 Chaffins
 
 , we addressed whether Code § 56-49.01 allowed a natural gas company to provide a notice of entry without giving the exact date of when the survey would take pace. In rejecting such open-ended notices, we explained that the notice requirements of Code § 56-49.01 provide an important purpose: they "allow the landowner to be present during the tests if desired, arrange for livestock to be confined prior to the entry, and ensure that any property damage is documented." 293 Va. at 569, 801 S.E.2d at 191. Therefore,
 

 the requirement that a notice of intent to enter must "set forth the date of the intended entry" has an unmistakable meaning. The notice must provide the landowner with
 
 dates certain
 
 upon which the natural gas company intends to enter the property.
 

 Id.
 
 (emphasis added).
 

 We further noted that focusing on the word "date," as the landowners do in the
 present case, "
 
 could
 
 suggest that a natural gas company only has a 24-hour period to complete its surveys and tests."
 
 Id.
 
 at 571 n.1, 801 S.E.2d at 192 n.1 (emphasis added). However, we went on to explain that such an interpretation is erroneous because, when the word "date" is read in context, it is clear that " Code § 56-49.01(C) only requires that a notice of intent to enter provide a limited range of dates as is necessary to complete the surveys and tests."
 
 Id.
 

 Here, the December 6, 2016 notice of intent to enter explained that completion of the surveys and other activities would require multiple crews over several days. The notice provided a limited set of dates, the majority of which overlapped, when each crew would be present. As the landowners have not challenged these date ranges as being unreasonable, we cannot say that the date ranges provided by ACP's notice of intent to enter violated the statute.
 

 Having determined that the trial court's application of Code § 56-49.01 was not improper in this case, we do not reach the question of whether the improper application of the statute could amount to an improper taking in violation of Article I, § 11 of the Constitution of Virginia.
 

 III. CONCLUSION
 

 For the foregoing reasons, we will affirm the decision of the trial court.
 

 Affirmed.
 

 15 U.S.C. § 717a(6) defines "natural gas company" as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale."
 

 The trial court made no ruling on the landowners' third argument which related to Code § 56-49.
 

 This same proposition has been recognized by several courts throughout the country.
 
 United States v. Fisk
 
 , 70 U.S. (3 Wall.) 445, 447,
 
 18 L.Ed. 243
 
 (1866) ("In the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.' ");
 
 Marvel v. Merritt
 
 ,
 
 116 U.S. 11
 
 , 12,
 
 6 S.Ct. 207
 
 ,
 
 29 L.Ed. 550
 
 (1885) (interpreting "and" as meaning either or both);
 
 Peacock v. Lubbock Compress Co.
 
 ,
 
 252 F.2d 892
 
 , 893 (5th Cir. 1958) ("But the word 'and' is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings.");
 
 Velazquez v. Countrywide Home Loans Servicing, L.P.
 
 ,
 
 660 F.3d 893
 
 (5th Cir. 2011) (" 'One of the recognized uses of 'and' is to refer to 'either or both' of two alternatives.' " (quoting
 
 Aerospatiale Helicopter Corp. v. Universal Health Servs. Inc.
 
 ,
 
 778 S.W.2d 492
 
 , 502 (Tex. App. 1989) ) );
 
 In re Det. of Altman
 
 ,
 
 723 N.W.2d 181
 
 , 187 (Iowa 2006) ("[T]he conclusion that the legislature used the word 'and' in a conjunctive sense .... is not automatic. 'It is a well-known rule of statutory construction that courts will construe disjunctive words as conjunctive, and vice versa, and will disregard technical rules of grammar and punctuation, when necessary to arrive at the intent of the legislative body.' " (quoting
 
 Green v. City of Mt. Pleasant
 
 ,
 
 256 Iowa 1184
 
 ,
 
 131 N.W.2d 5
 
 , 23 (1964) ) );
 
 Canale v. Steveson
 
 ,
 
 224 Tenn. 578
 
 ,
 
 458 S.W.2d 797
 
 , 800 (1970) ("Of course, the substitution of the disjunctive 'or' for conjunctive 'and' is not a novel approach to the concept of statutory construction. [T]he inaccurate use of 'and' and 'or' tends to infect statutory elements; and ... their meaning may be departed from and one read in place of the other in deference to the context.");
 
 see also
 

 Slodov v. United States
 
 ,
 
 436 U.S. 238
 
 , 246-47,
 
 98 S.Ct. 1778
 
 ,
 
 56 L.Ed.2d 251
 
 (1978) ;
 
 Doe v. Watson
 
 , 49 U.S. (8 How.) 263, 272-73,
 
 12 L.Ed. 1072
 
 (1850) ;
 
 Reese Bros., Inc. v. United States
 
 ,
 
 447 F.3d 229
 
 , 235 (3d Cir. 2006) ;
 
 Person v. Miller
 
 ,
 
 854 F.2d 656
 
 , 661 (4th Cir. 1988) ;
 
 United States v. Goodwin
 
 ,
 
 637 F.2d 250
 
 , 256 (4th Cir. 1981) ;
 
 Trammell Crow Residential Co v. Am. Prot. Ins. Co.
 
 ,
 
 574 Fed. Appx. 513
 
 , 521 (5th Cir. 2014) ;
 
 Orr v. United States
 
 ,
 
 486 F.2d 270
 
 , 276 (5th Cir. 1973) ;
 
 Union Cent. L. Ins. Co. v. Skipper
 
 ,
 
 115 F. 69
 
 , 72 (8th Cir. 1902) ;
 
 Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.
 
 ,
 
 520 F.3d 1358
 
 , 1361-62 (Fed. Cir. 2008) ;
 
 United States v. Mullendore
 
 ,
 
 30 F.Supp. 13
 
 , 15 (N.D. Okla. 1939) ;
 
 Medlin v. Crosby
 
 ,
 
 583 So.2d 1290
 
 , 1295-96 (Ala. 1991) (quoting
 
 In re Opinion of the Justices No. 93
 
 ,
 
 252 Ala. 194
 
 ,
 
 41 So.2d 559
 
 , 563 (1949) );
 
 McNutt v. Los Angeles
 
 ,
 
 187 Cal. 245
 
 ,
 
 201 P. 592
 
 , 595 (1921) ;
 
 Bania v. New Hartford
 
 ,
 
 138 Conn. 172
 
 ,
 
 83 A.2d 165
 
 , 167 (1951) ;
 
 Clay v. Central R. & B. Co.
 
 ,
 
 84 Ga. 345
 
 ,
 
 10 S.E. 967
 
 , 968-69 (1889) ;
 
 North Shore Post of American Legion v. Korzen
 
 ,
 
 38 Ill.2d 231
 
 ,
 
 230 N.E.2d 833
 
 , 835 (1967) ;
 
 State v. Myers
 
 ,
 
 146 Ind. 36
 
 ,
 
 44 N.E. 801
 
 , 801-02 (1896) ;
 
 State ex rel. Stephan v. Martin
 
 ,
 
 230 Kan. 747
 
 ,
 
 641 P.2d 1011
 
 , 1016 (1982) ;
 
 Commonwealth v. Bartholomew
 
 ,
 
 265 Ky. 703
 
 ,
 
 97 S.W.2d 591
 
 , 595 (App. Ct. 1936) ;
 
 Heckathorn v. Heckathorn
 
 ,
 
 284 Mich. 677
 
 ,
 
 280 N.W. 79
 
 , 81 (1938) ;
 
 Elliott Grocer Co. v. Field's Pure Food Market
 
 ,
 
 286 Mich. 112
 
 ,
 
 281 N.W. 557
 
 , 558 (1938) ;
 
 People v. Harrison
 
 ,
 
 194 Mich. 363
 
 ,
 
 160 N.W. 623
 
 , 625 (1916) ;
 
 Baker's Supermarkets, Inc. v. State
 
 ,
 
 248 Neb. 984
 
 ,
 
 540 N.W.2d 574
 
 , 581 (1995) ;
 
 Carlsen v. State
 
 ,
 
 127 Neb. 11
 
 ,
 
 254 N.W. 744
 
 , 747-48 (1934) ;
 
 State ex rel. Spillman v. Brictson Mfg. Co.
 
 ,
 
 114 Neb. 341
 
 ,
 
 207 N.W. 664
 
 , 665 (1926) ;
 
 Murphy v. Zink
 
 ,
 
 136 N.J.L. 235
 
 ,
 
 54 A.2d 250
 
 , 253 (1947) ;
 
 Colonial Mortg. Service Co. v. Southard
 
 ,
 
 56 Ohio St.2d 347
 
 ,
 
 384 N.E.2d 250
 
 , 252 (1978) ;
 
 Scituate v. O'Rourke
 
 ,
 
 103 R.I. 499
 
 ,
 
 239 A.2d 176
 
 , 182 (1968) ;
 
 State ex rel. Wisconsin Dry Milk Co. v. Circuit Court of Dodge Cty.
 
 ,
 
 176 Wis. 198
 
 ,
 
 186 N.W. 732
 
 , 734 (1922).
 

 Our decision in
 
 Palmer
 
 did not limit the privilege of entry granted under Code § 56-49.01 to only those natural gas companies vested with federal eminent domain power. Rather, our decision in
 
 Palmer
 
 merely held that the same privilege of entry recognized in the Restatement of Torts § 211 applies to natural gas companies under Code § 56-49.01.
 
 Palmer
 
 , 293 Va. at 583, 801 S.E.2d at 419.
 

 Indeed, any contrary interpretation of
 
 Palmer
 
 is not supported by the facts of that case. Although a FERC certificate grants a natural gas company the power to exercise eminent domain authority pursuant to 15 USCS § 717f(h), the FERC certificate relevant in
 
 Palmer
 
 (as well as the present case) did not issue until October 13, 2017, approximately three months after our decision permitting ACP to enter the landowners' property was handed down.
 
 See
 

 Atlantic Coast Pipeline, LLC
 
 , 161 F.E.R.C. P61,042 (October 13, 2017). As ACP was not vested with eminent domain authority through the issuance of a FERC certificate, our holding could not have been premised on the exercise of that federal eminent domain authority. Rather it is clear that our holding was based entirely on the General Assembly's decision to specifically extend the privilege to natural gas companies under Code § 56-49.01, regardless of the prior issuance of a FERC certificate.
 

 It is further worth noting that the definition of natural gas company under 15 U.S.C. § 717a does not include any requirement related to the issuance of a FERC certificate.
 

 Indeed, the parties are generally in agreement on this point. Further, we note that this position is supported by FERC's regulatory scheme for the issuance of a Certificate of Public Convenience and Necessity.
 
 See generally
 

 18 C.F.R. § 157.6
 
 (detailing the application process including what must be included in an application and requiring notice, including a map of the project, be provided to landowners whose property "[i]s directly affected (i.e., crossed or used)" by the proposed pipeline);
 
 18 C.F.R. § 380.12
 
 (identifying the mandatory regulatory reports that must be submitted as part of an application for a certificate);
 
 18 C.F.R. § 157.8
 
 (permitting a certificate to be issued prior to completion of the mandatory regulatory reports where the reports could not be completed because the landowner refused to allow access to the property).
 

 Even if there were still regulatory requirements that needed to be satisfied after the construction of the pipeline, it is doubtful that a natural gas company would need to rely on Code § 56-49.01 at that point. Indeed, the statute would no longer be necessary, because any activities necessary for the satisfaction of regulatory requirements after the pipeline was built would likely be limited to the property to which the natural gas company already has access, i.e., the property occupied by the pipeline.
 

 We further note that, in the event that a landowner's property is damaged as a result of these activities, the landowner is not without recourse. Code § 56-49.01(D) expressly provides that the natural gas company shall reimburse the landowners "for any actual damages resulting from such entry."