COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Raphael and White
Argued at Richmond, Virginia


STEVE THOMAS JURNIGAN, II
                                                            MEMORANDUM OPINION* BY
v.        Record No. 1493-23-2                       JUDGE KIMBERLEY SLAYTON WHITE
                                                                    JANUARY 21, 2025
LESLIE S. BYRUM, CO-EXECUTOR OF THE
  ESTATE OF FRANCIS M. MONAHAN, DECEASED, ET AL.


                    FROM THE CIRCUIT COURT OF SUSSEX COUNTY
                              W. Edward Tomko, III, Judge

              J. Daniel Vinson (Riley & Wells, on brief), for appellant.

              Bryn L. Clegg (Joseph P. Moriarty; Willcox Savage, P.C., on brief),
              for appellees Michael H. Stevens, James M. Bowes, and
              Southampton Bowman Club.

              No brief or argument for appellees Leslie S. Byrum and Connie
              Babb, Co-Executors of the Estate of Francis M. Monahan,
              Deceased.


        In this case, we address the question of whether a lower court may properly grant a plea in

bar based on Code § 8.01-249(6) without conducting a hearing ore tenus, where there are factual

disputes on the record.  In 2017, Steve Thomas Jurnigan, II, sued Michael H. Stevens, James M.

Bowes, Southampton Bowman Club ("SBC") (collectively referred to as "defendants"), and Francis

M. Monahan[1] for negligence arising from sexual abuse that he suffered between 1993 and 2000—

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] Monahan did not respond to or participate in any proceedings.  Monahan was
incarcerated while this complaint was filed based on charges related to the conduct alleged in
this suit and passed away while this litigation was pending.  Jurnigan amended his complaint to
substitute Monahan's Estate as a defendant following his death.  Monahan's Estate also did not
respond to or participate in any proceedings.

when he was a minor. The defendants filed pleas in bar arguing that Jurnigan's claims were subject to a two-year statute of limitations that began to run on the day he reached the age of majority and were, therefore, time barred as of August 2004. The circuit court agreed and granted the pleas in bar. Finding that the circuit court improperly granted the pleas in bar, this Court reverses the judgment of the circuit court and remands for further proceedings consistent with this opinion.

BACKGROUND

This case reaches appeal following the circuit court's order granting the defendants' pleas in bar, which asserted that Jurnigan's claims are barred by the applicable statute of limitations. Since the circuit court did not conduct a hearing ore tenus when considering the pleas in bar, this Court "considers 'solely the pleadings in resolving the issue presented' and deems the facts stated in the complaint to be true." *Doe v. Green*, 81 Va. App. 556, 561 (2024) (quoting *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022)).

STATEMENT OF FACTS

On March 13, 2017, Steve Thomas Jurnigan, II, filed a complaint in Sussex County Circuit Court against Monahan, Stevens, Bowes, and SBC. In his complaint, Jurnigan alleged that he suffered sexual abuse at the hands of Monahan continuously from 1993 until 2000—from the ages of 8 to 15—on property leased by SBC while Stevens and Bowes were both members and officers of the club. Jurnigan asserts that Stevens, Bowes, and SBC knew or should have known of the abuse and that their acts and omissions contributed to the injuries suffered as a result of Monahan's sexual misconduct.

SBC, Stevens, and Bowes each filed pleas in bars. Each defendant argued that Jurnigan's claims were barred by Code § 8.01-249(6)'s statute of limitations. The relevant version of Code § 8.01-249(6) ("1997 Accrual Statute") reads:

> In actions for injury to the person, whatever the theory of recovery, resulting from sexual abuse occurring during the infancy or

incapacity of the person, [the cause of action shall be deemed to accrue] upon removal of the disability of infancy or incapacity as provided in section 8.01-229 or, if the fact of the injury and its causal connection to the sexual abuse is not then known, when the fact of the injury and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist, or clinical psychologist.

1997 Va. Acts ch. 801.[2]

The 1997 Accrual Statute provides two ways by which accrual for a cause of action's time limit is triggered: either when the minor reaches the age of majority, or, "if the fact of the injury and its causal connection to the sexual abuse is not then known, when the fact of the injury and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist, or clinical psychologist." *Id.* The trial court held a hearing on the pleas in bar, at which it heard argument and received documentary evidence, including the transcript of Jurnigan's deposition, letters written by Jurnigan to law enforcement, and Jurnigan's answers to interrogatories. The circuit court did not hear any oral testimony, nor did it conduct any additional fact-finding inquiries.

The defendants argued that Jurnigan's cause of action accrued in 2002, when he turned 18, making Jurnigan's claims time-barred by the statute of limitations in 2004. The defendants alleged that Jurnigan's accrual could not be tolled past the date of his 18th birthday because he knew the "fact of the injury" as a minor, as he never repressed his memories of the abuse. Statements Jurnigan made after he turned 18 were introduced to suggest that he knew the causal connection between his injury and the sexual abuse he experienced as a minor.

Jurnigan argued that his cause of action did not begin to accrue until 2014, when he engaged in counseling with a licensed psychologist, because he did not "know" the fact of the injury and its causal connection to the sexual abuse before he reached the age of majority and, because of that,

---

[2] Both parties agree the 1997 statute is appropriate to analyze here.

accrual was delayed until the injury and its connection was communicated to him by a healthcare professional as required by statute.

Relevant to this issue, the lower court considered the following documentary evidence in deciding whether to grant the pleas in bar based on the statute of limitations: two letters written by Jurnigan to law enforcement in 2015, a transcript of Jurnigan's deposition, and Jurnigan's interrogatory responses.

In the first 2015 letter written to law enforcement, Jurnigan described academic and behavioral issues he experienced in high school, explaining that he "couldn't focus in school" due to "having flashbacks o[f] different abuse scenarios," describing "PTSD like symptoms" from mental images of the sexual abuse "burned" in his mind.

In the second 2015 letter, Jurnigan explained that he first revealed information regarding the abuses to a close friend in 2003. This close friend passed in 2004, causing Jurnigan to "hit rock bottom." In that same letter, Jurnigan wrote that he "made it through [the] funeral but a week or so after it hit [him] hard." "[C]ompounded with [his] confusion of [him]self, all the negative things that [he] endured as a child, late teen[,] and now early adult," he "couldn't take it." He went into a "deep state of depression." Jurnigan further explained that "[i]n the midst of this nightmare" he was "conscious" that he was "not acting normal." Jurnigan reflected that "everything bad that had ever happened to [him]" was "replaying in [his] mind like flash cards." Most of these flashbacks contained memories of the sexual abuse and he "started to realize just how much of a toll it had taken on [him]."

Jurnigan then, in the second letter, recounted a series of disclosures about the alleged abuse he made to former girlfriends beginning in 2003. He described how, towards the end of one of his former relationships, he had an "emotional breakdown" before disclosing the abuse to his ex-girlfriend. It was following this disclosure in 2010 that Jurnigan was first encouraged to come

forward about the abuse, but he was "scared for [his] reputation, [his] mental state, [his] family, etc." This ex-girlfriend's insistence that Jurnigan should not be around Monahan and her expressed distress over Monahan's presence started to show him that what had happened "needed to be addressed" and that he "needed help" but that he "wasn't strong enough to do it." The letter recalled Jurnigan's disclosure of the alleged abuse to his 2014 girlfriend, who convinced Jurnigan to disclose the information to his family on April 20, 2014.

In 2020, Jurnigan testified to the above information at a deposition. In explaining the circumstances surrounding his first disclosure to an ex-girlfriend in 2003 or 2004, Jurnigan described the panic he would experience when his romantic relationships would begin to deteriorate, believing that his own unfaithful actions were harming his girlfriend or the relationship. He reflected, opining "maybe something's wrong with me. Could that be [the] issue? You know, could the abuse have potentially done something to me?" According to Jurnigan, this ex-girlfriend indicated to him that "she felt that something was off with [him] as far as sexual tendencies or being committed in a relationship, and she really couldn't place it." Jurnigan further reflected that he was not sure if the abuse impacted the behaviors he exhibited in his relationship or if "it's just [him]."

During the deposition, Jurnigan revealed that, following the death of his friend, he attended several mental health counseling sessions, but did not disclose the abuse he experienced to any healthcare provider at that time. Instead, it was not until 2014 that Jurnigan disclosed details of the abuse to a healthcare professional. The disclosure to his 2014 girlfriend, as described in the second letter, prompted Jurnigan to seek out his primary care physician, hoping to be prescribed medication to help him cope with revealing the abuse to his family, although he only explained to the medical staff that "[s]omething big just happened, and I had already, you know, dealt with through the years depression, stress, and anxiety." Following this appointment, Jurnigan attended a counseling session on May 28, 2014, where he, for the first time, discussed the abuse with a mental health

counselor. Thereafter, he was referred to a sexual abuse mental health specialist and ultimately to

Dr. Alanna Hollings, Psy.D., C.S.O.T.P., a licensed clinical psychologist.

Jurnigan testified regarding his treatment with Dr. Hollings:

Q    And when you went to that appointment, like the last
     appointment, you told them that you were, you know, a
     victim of sexual abuse when you were a child?

A    When you said "the last appointment," you were referring to
     the first appointment with Dr. Hollings?

Q    Yeah, the -- when you went to see Dr. Hollings at the Center
     for Advanced Psychological Services on August 5, 2014, the
     same as when you went to Southside Counseling Center in
     May of 2014, you told them that you were -- you told both of
     them that you had been a victim of childhood sexual abuse.

A    Yes, sir.

Q    You provided them both details of the sexual abuse by
     Mr. Monahan?

A    Yes, sir, I did.

Q    You knew you were sexually molested as a child before ever
     going to counseling?

A    Yes, but it seems that at that point in time when I was
     acknowledging everybody's suggestion, whether it be [my
     then girlfriend] or my family or the Commonwealth's
     Attorney representatives, encouraging me to go, obviously I
     knew the events that happened to me because they happened
     to me physically, but in my mind, I guess I wasn't really -- I
     hadn't processed it.

Q    Okay. I understand you are claiming in this lawsuit that the
     first time a health care provider told you that the sexual abuse
     was related to your psychological and other issues was from
     Dr. Hollings, and I understand that you are claiming this in
     this lawsuit.

     But my question is more specific to that. Before you ever
     went and saw the counselors in 2014, you were aware and
     had knowledge that you had been sexually abused by
     Mr. Monahan as a child?

- 6 -

A       Yes, sir.

Q       And you knew that Mr. Monahan, given his age and your age
        when the occurrences happened, that what he did was illegal?

A       Yes, sir.

Q       And that's not -- you know, that abuse that happened to you
        when you were a child, that's -- that's nothing that you -- you
        forgot or -- about when you were an adult?

A       No, sir.

In his answers to interrogatories, Jurnigan recounted his sessions with Dr. Hollings, where, for the first several sessions, he briefly addressed his "sexual abuse issues." At this time, Jurnigan "believed that the abuse was in the past, that such had not affected him, and that he had made peace with the abuse and moved on," viewing the counseling "as a means to rectify his relationship problems." During a session around November 4, 2014, Jurnigan's then-girlfriend presented to Dr. Hollings a list of hurtful things Jurnigan had done during their relationship. It was then that Dr. Hollings informed Jurnigan that "he was a sex addict and suffered from other major psychological and self-confidence issues." Jurnigan explained that, "[u]ntil hearing this revelation, [he] thought that he was normal in his thought processes and attitude." During his next session with Dr. Hollings, Jurnigan was informed that he had been living the past twenty years with "sex addiction, porn addiction, pathological lying, substance abuse addictions, and alcoholism." Jurnigan claimed that it was only then, on or about November 13, 2014, that he realized, accepted and understood that he "was mentally and emotionally harmed and damaged from the years of sexual abuse by Frank Monahan as a child."

Following the hearing, the lower court issued a letter opinion ruling that the two-year statute of limitations began to run in 2002, when Jurnigan reached adulthood, and expired in 2004. In making this ruling, the lower court noted that "[a]lthough [Jurnigan] claims that he was not aware of his injuries and their causal connection to the alleged sexual abuse until receiving psychotherapy,

- 7 -

other parts of the record indicate otherwise." The lower court dismissed Jurnigan's claims as time barred as of 2004.

Jurnigan noted a timely appeal. His sole assignment of error asserts that the trial court erred in granting the pleas in bar of the statute of limitations and dismissing Jurnigan's claims as time barred. This Court agrees, reverses the decision of the circuit court, and remands this case for further proceedings consistent with this opinion.

ANALYSIS

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). "Two possible standards of review apply, depending on whether the plea's proponent elects to meet that burden by presenting evidence or relying on the pleadings." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). When parties present evidence ore tenus, the trial court's factual findings will be accorded the weight of a jury finding and will be given due deference unless the findings are plainly wrong or without evidentiary support. *See id.* Where no such evidence is presented, the trial and appellate courts consider the pleadings alone in resolving whether to grant the plea in bar. *See id.* "This approach results in functionally de novo review." *Id.*

*The proper standard of appellate review is a de novo review.*

The parties dispute the correct standard of review to apply to this action. While Jurnigan advocates for a de novo review, the defendants claim that the circuit court's factual findings should not be disturbed unless plainly wrong or without evidence. The defendants' position is that the documentary exhibits provided to the circuit court for consideration of the pleas in bar constitute "taking evidence" for the purposes of establishing the more deferential standard of review on appeal. This position is mistaken.

Virginia law clearly establishes two scenarios regarding pleas in bar. The first is where the trial court decides the plea based solely on the allegations within the complaint, taken as true for purposes of the motion. Under this circumstance, the trial court's decision is reviewed de novo. *See, e.g.*, *Massenburg*, 298 Va. at 216. In that scenario, the plea operates "essentially [as] a demurrer." *Our Lady in Peace, Inc. v. Morgan*, 297 Va. 832, 847 n.4 (2019). The second is where "the 'parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Massenburg*, 297 Va. at 216 (quoting *Hawthorne*, 279 Va. at 577).

While our Supreme Court's opinions may sometimes suggest that these scenarios are the only two that ever occur, *e.g.*, *id.* ("Two possible standards of review apply, depending on whether the plea's proponent elects to meet that burden by presenting evidence or relying on the pleadings."), defendants sometimes offer evidence in support of a plea in bar beyond the complaint itself, such as "correspondence" or an "interrogatory" answer, *Robinson v. Nordquist*, 297 Va. 503, 509 (2019). While "correspondence" or "interrogatory" answers are offered in support, the trial court does not actually conduct a hearing ore tenus to hear witness testimony or to resolve disputed facts. *See Moore v. Barton*, 2024 Ala. Civ. App. LEXIS 61, at *13-15 (May 31, 2024) (explaining that the ore tenus rule applies to disputed issues of fact where at least some *oral testimony* is taken by the trial court).

In fact, this is the exact posture in *Robinson*, where the defendant submitted the parties' correspondence and an interrogatory answer in support of the plea in bar, which the trial court sustained. In reversing, however, the Supreme Court applied de novo review, stating "[w]here no evidence is taken in support of the plea, the trial court, and the appellate court upon review,

must rely solely upon the pleadings in resolving the issue presented." *Robinson*, 297 Va. at 513-14 (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)).

Here, the defendants submitted documentary correspondence, deposition transcripts, and interrogatory answers, along with the pleadings, in support of their pleas in bar against Jurnigan's claims. The trial court never held a hearing ore tenus to hear witness testimony or to resolve disputed facts. For the trial court's factual determinations to be given deference, the trial court must have held a hearing ore tenus, taking live testimony to resolve disputed facts. The correct standard of review for this appeal is thus de novo.

*There exists a genuine issue of material fact in dispute.*

Where, as here, no evidence is taken in support of the plea in bar, the trial court, and the appellate court upon review, considers solely the pleadings in resolving the issue presented. *Lostrangio v. Laingford*, 261 Va. 495, 496 (2001). As such, the plea in bar operates as a motion for summary judgment. Just as a circuit court may appropriately grant summary judgment "only in cases in which no material facts are genuinely in dispute," *Klaiber v. Freemason Assocs.*, 266 Va. 478, 484 (2003), a circuit court may appropriately grant a plea in bar in this posture only in cases in which no material facts are genuinely in dispute. A factual issue is genuinely in dispute when reasonable factfinders could draw different conclusions from the evidence, both the facts asserted and the reasonable inferences arising from those facts. *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021). In determining whether there are any material facts genuinely in dispute, the circuit court must, in reviewing the plea in bar, accept as true "those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Dickerson v. Fatehi*, 253 Va. 324, 327 (1997). In an appeal of a decision granting a plea in bar on the pleadings, the appellate court reviews de novo the trial court's finding that there are no material facts genuinely in dispute and its application of law to the facts.

At the plea in bar hearing, the issue before the circuit court was determining whether Jurnigan knew the fact of the injury and its causal connection to the sexual abuse as a minor. If Jurnigan was aware of the injury and its causal connection as a minor, then his cause of action related to the sexual abuse would have begun accruing in 2002 and would have expired in 2004.

Conversely, if Jurnigan was unaware of the fact of the injury and its causal connection, then his cause of action would have begun accruing in 2014, when the connection was first communicated to him by Dr. Hollings.[3] In 2011, the General Assembly amended the limitations period for child sexual abuse cases from 2 years to 20 years. Code § 8.01-243(D). Thus, if Jurnigan's cause of action did not begin accruing until November 2014, then Jurnigan's claims would be subject to the 20-year statute of limitations period contained in Code § 8.01-243(D).[4] To determine whether there exists a genuine issue of material fact regarding Jurnigan's knowledge, this Court must resolve the dispute surrounding what it means to know the fact of the injury and its causal connection to the abuse.

Generally, an action for personal injury accrues and the statute of limitations begins to run on "the date the injury is sustained." Code § 8.01-230; *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 22 (2013). Code § 8.01-243(A) provides that "every action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues." If a cause of action accrued during infancy, however, "the time during which he is within the age of minority shall not be counted as any part of the period within which the action must be brought." Code § 8.01-229(A)(2)(a). "Ordinarily, the fact that damage has not yet been

---

[3] It is undisputed that Dr. Hollings is a licensed psychologist within the meaning of Code § 8.01-249(6).

[4] At oral argument, defendants agreed that, were Jurnigan's claims deemed to have accrued in 2014, the 20-year statute of limitations period contained within Code § 8.01-243(D) would apply.

discovered does not affect either the accrual of the cause of action or the running of the limitations period." *Doe*, 81 Va. App. at 566 (citing Code § 8.01-230; *Starnes v. Cayouette*, 244 Va. 202, 205-06 (1992)).

The timing of when an injury actually occurs becomes irrelevant for the purposes of accrual where the General Assembly contemplated an exception to the Code § 8.01-230-standard that extends the accrual period. *See Kiser*, 285 Va. at 19-20. In 1991, the General Assembly enacted Code § 8.01-249(6) to permit delayed accrual for claims of childhood sexual abuse. In 2002, when Jurnigan reached the age of majority and his cause of action arose, the version of Code § 8.01-249(6) in effect provided:

> In actions for injury to the person, whatever the theory of recovery, resulting from sexual abuse occurring during the infancy or incapacity of the person, [the cause of action shall be deemed to accrue] upon removal of the disability of infancy or incapacity as provided in section 8.01-229 or, *if the fact of the injury and its causal connection to the sexual abuse is not then known*, when the fact of the injury and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist, or clinical psychologist.

1997 Va. Acts ch. 801 (emphasis added).[5]

Jurnigan asserts that, to trigger accrual of his causes of action under the 1997 Accrual Statute, "'communica[tion] to the person by a licensed physician, psychologist, or clinical psychologist' is the only manner in which an individual can acquire the knowledge of 'the fact of the injury and its causal connection to the sexual abuse.'"

Defendants argue, however, that Jurnigan possessed sufficient knowledge to trigger the accrual of his causes of action while he was a minor because he never repressed memories of the suffered abuse and because the 1997 Accrual Statute's knowledge requirement did not necessitate that the fact of the injury and its causal connection to the sexual abuse be

---

[5] It is undisputed that the 1997 Accrual Statute is the applicable statute for this action.

communicated by a licensed physician, psychologist, or clinical psychologist while the plaintiff was a minor for accrual to begin when the plaintiff reaches the age of majority. Defendants contend that if a plaintiff is "actually aware of the alleged abuse when he or she reaches the age of majority," then the knowledge requirement of the 1997 Accrual Statute is satisfied and accrual for the statute of limitations will begin to run when the plaintiff reaches the age of majority.

"We review issues of statutory interpretation de novo." *Taylor v. Commonwealth*, 77 Va. App. 149, 162 (2023). "This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute." *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015)). Where the statutory language is unambiguous, this Court is "bound by the plain meaning of that statutory language." *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quoting *Alston v. Commonwealth*, 274 Va. 759, 769 (2007)).

Interpreting the knowledge requirement—specifically, what is meant by "is not then known"—in the 1997 Accrual Statute, this Court finds that delayed accrual applies when the fact of the plaintiff's injury and its causal connection to the sexual abuse is not known by the plaintiff before he reaches the age of majority, *see* 1997 Va. Acts ch. 801; that communication to the plaintiff by a licensed physician, psychologist, or clinical psychologist before the plaintiff reaches the age of majority is not necessary to determine "knowledge" of the fact of the injury and its causal connection to the sexual abuse in determining whether accrual is delayed; and that the plaintiff need not have repressed his or her memory of the sexual abuse to delay accrual.

The most current version of the Accrual Statute, enacted in 2021, provides:

> In actions for injury to the person, whatever the theory of recovery, resulting from sexual abuse occurring during the infancy or incapacity of the person, [the cause of action shall be deemed to accrue] upon the later of the removal of the disability of infancy or incapacity as provided in § 8.01-229 or when the fact of the injury

and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist, or clinical psychologist.

2021 Va. Acts Spec. Sess. I ch. 195.

This Court has recently held that, because the 2021 Accrual Statute omits the knowledge requirement that is included in the 2005 version of the Accrual Statute, the 2021 Accrual Statute permits a claim to begin running when a psychologist first communicates the fact of a plaintiff's injury regardless of his or her prior awareness of the injury and its causal connection to the abuse. *Doe*, 81 Va. App. at 566.

In that case, the Court examined the 2005 version of the Accrual Statute, which includes an identical knowledge requirement to the 1997 Accrual Statute at issue here. *See* 2005 Va. Acts ch. 213. The knowledge requirement in the 2005 Accrual Statute (and the 1997 Accrual Statute) "imposed a significant restriction as it conditioned the application of the delayed accrual date on the plaintiff's lack of knowledge of 'the fact of injury and its causal connection to the sexual abuse' before reaching the age of majority." *Doe*, 81 Va. App. at 572. Interpreting the 1997 Accrual Statute through its plain language, this Court held that the legislative intent was to "prevent plaintiffs from reviving otherwise time-barred actions for which they had prior knowledge but did not act." *Id.*[6]

What is apparent from the plain language of the statute is that the plaintiff must have possessed knowledge of *both* the injury and its causal connection to the sexual abuse—not just of the fact of the sexual abuse. An "injury" in tort is commonly understood to be a "positive,

---

[6] Defendants cite *Ackerman v. Ackerman*, 42 Va. Cir. 103 (Fairfax Cnty. 1997), to suggest a requirement that a child-sexual abuse victim must have repressed memories to qualify for tolling under the 1997 Accrual Statute. Defendants rely on *Ackerman*'s assertion that "[t]he legislature's 1991 amendment was directed toward providing a remedy to victims of child abuse who suffered from repressed memories relating to the abuse." *Id.* at 106. Based on the 1997 Accrual Statute's plain language, there is no requirement for the purposes that the plaintiff had repressed his memory of the alleged sexual abuse.

physical or mental hurt." *Nunnally v. Artis*, 254 Va. 247, 252 (1997). This Court recognizes that sexual abuse suffered by a plaintiff "inherently caused [his] injury when it occurred." *Haynes v. Haggerty*, 291 Va. 301, 306 (2016). The plain language of the 1997 Accrual Statute, however, "creates a distinction between the existence of such a physical or psychological 'injury' and the act that caused the injury." *Doe*, 81 Va. App. at 572.

Where a statutory phrase uses the conjunction "and," it is readily and naturally assumed that the legislature intended the word to "have its ordinary, literal conjunctive meaning." *Id.* (quoting *Barr v. Atl. Coast Pipeline, LLC*, 295 Va. 522, 552 (2018)). Furthermore, "by 'use of the conjunctive "and," the statute is clear that *both*' of the conditions separated by the conjunction must be met to satisfy a statutory requirement." *Id.* (quoting *Varga v. Commonwealth*, 260 Va. 547, 551 (2000)). As is true of the 2005 Accrual Statute, the conjunctive use of the word "and" in the phrase "if the fact of injury *and* causal connection to the sexual abuse is not then known" indicates that the "injury" of which the plaintiff lacks knowledge is "something other than the sexual abuse itself." *Id.* at 572-73.

This Court disagrees with Jurnigan's contention that communication of the injury and its causal connection to the sexual abuse by one of the statutorily named professionals is the *only* way in which Jurnigan could have obtained the requisite knowledge prior to reaching the age of majority. While communication by a healthcare professional may be sufficient to provide the requisite knowledge for accrual to begin when the plaintiff reaches majority, it is not a necessary precondition for a finding that a minor possessed knowledge of the fact and the connection under the 1997 Accrual Statute.

Given the lack of appellate guidance on how to apply the delayed accrual provision in a similar posture to the case before us, this Court looks to an Eastern District of Virginia decision applying Code § 8.01-249(6) in the motion to dismiss stage. In *B.T. v. Silver Diner Dev., LLC*,

- 15 -

2022 U.S. Dist. LEXIS 146916 (E.D. Va. Aug. 16, 2022), the court denied a motion to dismiss asserting the statute of limitations for a claim of child sexual abuse. *Id.* at *13. There, the plaintiff described psychological injuries she incurred as a result of the sexual abuse she endured as a minor but did not provide any facts to indicate that these injuries had manifested before she reached the age of majority rather than later in life. *Id.* at *2-3.

The plaintiff in *B.T.* also did not describe any events or circumstances to suggest that she had known that the injuries were connected to the sexual abuse before being informed of this fact by a psychologist many years after she reached the age of majority. *Id.* Given the lack of details establishing a definitive timeline for the plaintiff's awareness, the court concluded that it was "plausible" that she had not known of her injuries or the cause of those injuries before reaching adulthood. *Id.* at *13-14. The district court denied the defendant's motion to dismiss because "it [was] not clear from the face of the complaint that Plaintiff was aware of the causal connection between her abuse and her injuries before she met with a mental health professional in 2020." *Id.* at *13. The district court explained that "dismissal of the complaint because of a statute of limitations defense is 'rare,' and it should only occur if the time bar 'clearly appears on the face of the complaint.'" *Id.* at *14 (first quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); and then quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

This Court distinguished *B.T.* in *Doe v. Green*, where the defendant's plea in bar based on the 2005 Accrual Statute was granted. In *Doe*, the circuit court considered *undisputed* facts set forth in the pleadings. *Doe*, 81 Va. App. at 571. The plaintiff's argument hinged on the assertion that, to have been aware of the fact of the injury to start accruing when she reached the age of majority, she must have received a formal diagnosis of a specific injury as a minor. *Id.* at 574. Based on the plain meaning of the statute, this Court held that the term "injury" as included in

Code § 8.01-249(6) does not need to be a formal diagnosis. Instead, the "injury" can be a manifestation of symptoms of which the plaintiff is aware are causally connected to the sexual abuse. *Id.* In *Doe*, the undisputed facts established the plaintiff manifested several symptoms as a minor and, as a minor, was "clearly" aware of the "causal origin" of her conditions. *Id.*

Jurnigan's position is similar to the plaintiff's in *B.T.* Like the district court in *B.T.*, the circuit court was confronted with conflicting evidence when considering whether to grant the defendants' pleas in bar. To be sure, here, the circuit court's letter opinion acknowledged as such, recognizing that, while the record includes Jurnigan's allegations regarding his lack of knowledge, "other parts of the record indicate otherwise." Defendants, in support of their pleas in bar, highlighted a myriad of statements made by Jurnigan in his deposition, written letters to law enforcement, and interrogatories to demonstrate that he possessed knowledge of his injuries and their causal connection to the sexual abuse as a minor.

Importantly, however, is that all these statements were made by Jurnigan shortly after Dr. Hollings first communicated to him the causal connection between his injuries and the sexual abuse. It is "plausible" that Jurnigan's reflections upon the specific impact the sexual abuse had on his mental state and behavior as a child, teen, and early adult were influenced by Dr. Hollings' revelation. Additionally, Jurnigan's statement that, "[u]ntil hearing this revelation, [he] thought that he was normal in his thought processes and attitude," directly contradicts any contention that Jurnigan understood the causal connection between the injury and the sexual abuse as a minor. Furthermore, Jurnigan expressed his belief that he was attending counseling not to address the sexual abuse and the effects of it, but to "rectify his relationship problems."

Without a hearing ore tenus, the circuit court was not entitled to resolve this factual dispute. Because there exists a genuine issue of material fact in dispute, the trial court's decision to grant the pleas in bar was error.

CONCLUSION

For the foregoing reasons, the circuit court's decision granting the pleas in bar is reversed.

This matter is remanded to the trial court for proceedings consistent with this opinion.

*Reversed and remanded.*