OPINION BY JUSTICE WILLIAM C. MIMS
 

 In this appeal, we consider whether a foreign corporation may exercise the entry-for-survey privilege given to natural gas companies by Code § 56-49.01. We also consider whether Code § 56-49.01 infringes upon provisions of the Constitution of Virginia.
 

 I. Background and Procedural History
 

 The Atlantic Coast Pipeline, LLC ("ACP") is a public service company organized under the laws of the State of Delaware. It is primarily "engaged in the underground storage and transportation of natural gas in interstate commerce." As such, it is a "natural gas company" as defined by 15 U.S.C. § 717a(6) and is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act,
 
 15 U.S.C. § 717
 

 et seq.
 
 ACP is engaged in FERC's regulatory approval process to build a natural gas transmission line that would extend from West Virginia to North Carolina, passing through the Commonwealth. As part of this process, ACP must conduct surveys, tests, appraisals, and other examinations upon properties located along the pipeline's proposed routes.
 

 Hazel Palmer owns real property in the Commonwealth along a proposed route. On March 6, 2015, ACP sent Palmer a letter seeking permission to enter her property to
 conduct preliminary surveys. When Palmer withheld her consent, ACP provided a notice of intent to enter her property pursuant to Code § 56-49.01. The notice explained that Code § 56-49.01"authorizes certain natural gas companies to enter upon property, without permission, for examinations, tests, hand auger borings, appraisals and surveys for proposed natural gas lines in order to satisfy regulatory requirements and to select the most advantageous route."
 

 Palmer continued to deny ACP access to her property, and ACP filed a petition for a declaratory judgment in the circuit court requesting a declaration of its rights under Code § 56-49.01. Palmer filed a plea in bar, contending that Code § 56-49.01 only applies to domestic public service companies because it is within Title 56 of the Code of Virginia. She also demurred, arguing that Code § 56-49.01 is unconstitutional under Article I, § 11 of the Constitution of Virginia because it impermissibly burdens a fundamental right.
 

 The circuit court overruled Palmer's plea in bar and demurrer. Regarding the plea in bar, it found that the applicability of Code § 56-49.01"turns upon a definition borrowed from [15 U.S.C. § 717a ] rather than an implied definition suggested by its placement within the Code of Virginia." Regarding the demurrer, the circuit court noted that the "legal challenges to the validity of [statutes like Code § 56-49.01 across the country] on the basis that they [e]ffect a taking without just compensation have been consistently rejected." (quoting
 
 Klemic v. Dominion Transmission, Inc.
 
 ,
 
 138 F.Supp.3d 673
 
 , 690 (W.D. Va. 2015) ). Accordingly, it concluded that "[a] landowner has no constitutionally protected property right to exclude an authorized utility from entering his property for survey purposes." We granted Palmer this appeal.
 

 II. Analysis
 

 A. Applicability of Code § 56-49.01 to Foreign Corporations
 

 Palmer contends that ACP cannot exercise the entry-for-survey power of Code § 56-49.01 for two reasons. First, she argues that a "natural reading" of the statute "dictates that [it] only applies to Virginia public service companies." Second, she argues that the statute must be interpreted to avoid conflicting with Article IX, § 5 of the Constitution of Virginia. These arguments present "purely legal questions of statutory and constitutional interpretation which we review de novo."
 
 L.F. v. Breit
 
 ,
 
 285 Va. 163
 
 , 176,
 
 736 S.E.2d 711
 
 , 718 (2013).
 

 1. Unambiguous Language of Code § 56-49.01
 

 In analyzing a statute, the Court's primary objective is "to ascertain and give effect to legislative intent."
 
 Conger v. Barrett
 
 ,
 
 280 Va. 627
 
 , 630,
 
 702 S.E.2d 117
 
 , 118 (2010) (quoting
 

 Turner v. Commonwealth
 
 ,
 
 226 Va. 456
 
 , 459,
 
 309 S.E.2d 337
 
 , 338 (1983) ). "That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction."
 
 Crown Cent. Petroleum Corp. v. Hill
 
 ,
 
 254 Va. 88
 
 , 91,
 
 488 S.E.2d 345
 
 , 346 (1997).
 

 Code § 56-49.01 provides, in relevant part, that
 

 A. Any firm, corporation, company, or partnership, organized for the bona fide purpose of operating as a natural gas company as defined in 15 U.S.C. § 717a, as amended, may make such examinations, tests, hand auger borings, appraisals, and surveys for its proposed line or location of its works as are necessary (i) to satisfy any regulatory requirements and (ii) for the selection of the most advantageous location or route, ... [and] may enter upon any property without the written permission of its owner....
 

 On appeal, Palmer argues that Code § 56-49.01 only applies to domestic natural gas companies because it is located within Title 56 of the Virginia Code, which governs "Public Service Companies." She suggests that if the statute was intended to apply to "any" natural gas company, "it would have been placed in Title 13.1, which governs '[c]orporations' generally."
 

 This argument is not persuasive. Code § 56-49.01 provides its entry-for-survey power to "
 
 [a]ny
 
 ... corporation [or] company ... organized for the bona fide purposes of operating as a natural gas company as defined
 in 15 U.S.C. § 717a."
 

 Id.
 

 (emphasis added). For the purposes of Title 56, the term "[c]orporation" or "company" includes not only corporations "created by acts of the General Assembly of Virginia, or under the general incorporation laws of this Commonwealth," but also "
 
 all corporations ... doing business therein
 
 ." Code § 56-1 (emphases added). Thus, both domestic corporations and foreign corporations that are "doing business" within the Commonwealth-such as ACP-are included in the definition of "corporation" for the purposes of Title 56.
 

 Next, Code § 56-49.01 applies to "[a]ny" such "corporation" that fits within 15 U.S.C. § 717a's definition of a "natural gas company." That is, the corporation must be "engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. § 717a(6) ;
 
 see also
 
 15 U.S.C. § 717a(1). Palmer does not contest that ACP fits within this definition. Accordingly, by its plain language, Code § 56-49.01 applies to foreign natural gas companies as defined by 15 U.S.C. § 717a(6) that do business in Virginia, including ACP.
 

 2. Article IX, Section 5 of the Constitution of Virginia
 

 Palmer next argues that we must deny the entry-for-survey privilege to foreign corporations to avoid conflicting with Article IX, § 5 of the Constitution of Virginia. This constitutional provision states, in relevant part, that "[n]o foreign corporation shall be authorized to carry on in this Commonwealth the business of, or to exercise any of the powers or functions of, a public service enterprise." Va. Const. art. IX, § 5. We cannot consider this argument because Palmer neither presented it to the circuit court nor raised it in her opening brief on appeal.
 

 Rule 5:25 states that "[n]o ruling of the trial court ... will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." This rule "exists to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials."
 
 Reid v. Boyle
 
 ,
 
 259 Va. 356
 
 , 372,
 
 527 S.E.2d 137
 
 , 146 (2000) (quoting
 
 Fisher v. Commonwealth
 
 ,
 
 236 Va. 403
 
 , 414,
 
 374 S.E.2d 46
 
 , 52 (1988) ).
 

 Palmer admitted at oral argument that she failed to present her Article IX, § 5 argument to the circuit court. As a result, there is no ruling on the issue, and we will not accept Palmer's invitation to reverse the circuit court's opinion based on this undisclosed ground.
 
 McDonald v. Commonwealth
 
 ,
 
 274 Va. 249
 
 , 255,
 
 645 S.E.2d 918
 
 , 921 (2007) (refusing to consider a facial invalidity challenge to Code § 18.2-361(A) because the appellant never raised such a claim in the circuit court);
 
 see also
 

 Jones v. Commonwealth
 
 ,
 
 293 Va. 29
 
 , 39 n.5,
 
 795 S.E.2d 705
 
 , 710 n.5 (2017) (The Court "will not consider an argument that differs from the specific argument presented to the trial court even if it relates to the same general issue." (citing
 
 Floyd v. Commonwealth
 
 ,
 
 219 Va. 575
 
 , 584,
 
 249 S.E.2d 171
 
 , 176 (1978) )).
 

 Palmer also failed to raise the argument in her opening brief on appeal. Rule 5:27 states that "[t]he opening brief of the appellant ... must contain ... [t]he standard of review, the argument, and the authorities relating to each assignment of error." Rule 5:27(d). The failure to comply with this rule "results in waiver of the arguments the party failed to make."
 
 John Crane, Inc. v. Hardick
 
 ,
 
 283 Va. 358
 
 , 376,
 
 722 S.E.2d 610
 
 , 620 (2012).
 

 Regarding her first assignment of error, Palmer's opening brief argues, as discussed above, that the location of Code § 56-49.01 within the Code of Virginia prohibits foreign public service companies from utilizing its entry-for-survey power. In the last four lines of her argument relating to the placement of the statute within the Code, she quotes an excerpt from Article IX, § 5 and immediately concludes that the trial court erred by ruling "otherwise." Later, for the first time in the course of this litigation, she presents extensive argument related to Article IX, § 5 in her reply brief.
 

 At oral argument, Palmer's counsel admitted that he "didn't present [the argument in the opening brief] because [he] thought it
 was a silver bullet." He stated that he "referenced" the constitutional provision but "held back" the argument "to see what [ACP was] going to do with it" and then "went full blast in the reply [brief]." He took the position that referencing Article IX, § 5 in the opening brief was sufficient to preserve the issue. It is not.
 

 Rule 5:27 requires an argument, and merely referencing a provision is not an argument. Accordingly, the argument is waived.
 
 John Crane
 
 ,
 
 283 Va. at 376
 
 ,
 
 722 S.E.2d at
 
 620 ;
 
 see also
 

 Whitley v. Commonwealth
 
 ,
 
 223 Va. 66
 
 , 79 n.2,
 
 286 S.E.2d 162
 
 , 170 n.2 (1982) ("[W]e will not notice a non-jurisdictional question raised for the first time in a reply brief filed in this Court.").
 

 B. Article I, § 11 of the Constitution of Virginia
 

 In her second assignment of error, Palmer contends that the trial court erred by overruling her demurrer because Code § 56-49.01 infringes upon her "fundamental right to private property in violation of Article I, § 11" of the Constitution of Virginia. Palmer's demurrer argued that Code § 56-49.01 violated Article I, § 11 by (1) authorizing "a taking or damaging of private property for private use," (2) authorizing "a taking or damaging of private property without just compensation," and (3) "impermissibly burden[ing] a fundamental right." However, her second assignment of error is restricted to the third claim of her demurrer. In fact, she expressly stated in her reply brief that she is not making a "takings" argument on appeal.
 
 [1]
 

 Palmer generally maintains that Article I, § 11 defines the right to private property as fundamental, and that Code § 56-49.01 unconstitutionally infringes upon her fundamental right to exclude ACP. In addressing this argument, we noted that "[t]here is no stronger presumption known to the law than that which is made by the courts with respect to the constitutionality of an act of Legislature."
 
 Whitlock v. Hawkins
 
 ,
 
 105 Va. 242
 
 , 248,
 
 53 S.E. 401
 
 , 403 (1906) ;
 
 In re Phillips
 
 ,
 
 265 Va. 81
 
 , 85,
 
 574 S.E.2d 270
 
 , 272 (2003) ( "[A]ll acts of the General Assembly are presumed to be constitutional.").
 

 1. Right to Exclude
 

 In 2012, Article I, § 11 was amended to explicitly state that the right to private property is fundamental in Virginia. 2011 Acts ch. 757; 2012 Acts chs. 564, 684, 736, and 738. Palmer correctly notes that "[t]he right to exclude others is generally 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.' "
 
 Ruckelshaus v. Monsanto Co.
 
 ,
 
 467 U.S. 986
 
 , 1011,
 
 104 S.Ct. 2862
 
 ,
 
 81 L.Ed.2d 815
 
 (1984) (quoting
 
 Kaiser Aetna v. United States
 
 ,
 
 444 U.S. 164
 
 , 176,
 
 100 S.Ct. 383
 
 ,
 
 62 L.Ed.2d 332
 
 (1979) ). Yet, the common law has long recognized that the right to exclude is not absolute.
 
 See
 

 Kovacs v. Cooper
 
 ,
 
 336 U.S. 77
 
 , 85,
 
 69 S.Ct. 448
 
 ,
 
 93 L.Ed. 513
 
 (1949) (plurality opinion) (observing that "even the fundamental rights of the Bill of Rights are not absolute").
 

 The common law privilege to enter private property for limited purposes is outlined in the American Law Institute's first Restatement of Torts, published in 1934. Restatement of Torts §§ 191 -211 (1934). Comment c of § 211 explains that this privilege applies "where an employee of a public utility is ... authorized to enter upon privately owned land for the purpose of making surveys preliminary to instituting a proceeding for taking by eminent domain."
 

 Id.
 

 at § 211 cmt. c.
 

 Today, every state has codified the common law privilege of a body exercising eminent domain authority to enter private property to conduct preliminary surveys without trespass liability.
 
 [2]
 
 Virginia statutory law has
 done so for 235 years. In 1782, a law permitted authorized surveyors to enter private land to survey the location of public roads and made it unlawful for anyone to "stop, oppose, or hinder" them. 1782 Acts ch. 51,
 
 reprinted in
 
 11 William Waller Hening,
 
 Statutes at Large
 
 27-28 (1823). The Code of 1819 gave a turnpike company "full power and authority to enter upon all lands and tenements through which they may judge it necessary to make said road; and to lay out the same according to their pleasure." 2 Va. Rev. Code ch. 234, § 7 (1819). The Code of 1860 gave "internal improvement" companies the authority to "enter upon any lands for the purpose of examining the same and surveying and laying out such as may seem fit to any officer or agent authorized by it, provided no injury be done to the owner or possessor of land." Va. Code tit. 17, ch. 56, § 4 (1860).
 

 Most relevant to the present case, the Code of 1904 granted entry-for-survey authority to "[a]ny company" vested with eminent domain authority. Code § 1105f(3) (1904) (authorizing any company with power to condemn lands to "enter upon any lands ... for the purpose of examining the same, and surveying"). Today, the Code contains three such statutes: Code §§ 56-49, 56-49.01, and 25.1-203. Code §§ 56-49 and 56-49.01 provide an entry-for-survey privilege specifically to "public service corporation[s]" and "natural gas compan[ies]." Code § 25.1-203(A) extends the same privilege to "any petitioner exercising" the power of eminent domain.
 

 In sum, Palmer's right to exclude others is not absolute. The common law has long recognized the privilege of an entity exercising eminent domain power to enter private property to conduct surveys. This same privilege has a well-established historical pedigree in our statutory law. Accordingly, Palmer's right to exclude others from her property does not extend to ACP in the present case.
 

 2. 2012 Amendment to Article I, § 11 of the Constitution of Virginia
 

 Palmer does not rebut any of the above authorities. Rather, she argues that the 2012 amendment to Article I, § 11 of the Constitution of Virginia created a new constitutional right to exclude ACP from her property. We disagree.
 

 The 2012 amendment to Article I, § 11 was "strongly influenced by the decision of the United States Supreme Court in the case of
 
 Kelo v. New London
 
 ." 2012 Va. Op. Att'y Gen. 11-135, 2012 Va. AG LEXIS 3, at *8 (Jan. 26, 2012). In
 
 Kelo
 
 , the United States Supreme Court held that it was a valid "public use" to condemn non-blighted private land and transfer it to a private developer "to promote economic development"-specifically noting that doing so would create "in excess of 1,000 jobs" and "increase tax and other revenues."
 
 Kelo v. City of New London
 
 ,
 
 545 U.S. 469
 
 , 472, 484,
 
 125 S.Ct. 2655
 
 ,
 
 162 L.Ed.2d 439
 
 (2005). Nevertheless, the majority noted that "nothing in our opinion precludes
 any State from placing further restrictions on its exercise of the takings power," and that "many States already impose 'public use' requirements that are stricter than the federal baseline."
 

 Id.
 

 at 489
 
 ,
 
 125 S.Ct. 2655
 
 .
 

 The 2012 amendment to Article I, § 11 accepted this invitation to place further restrictions on the takings power. For example, Article I, § 11 now provides, in direct contradiction to the rationale employed by the United States Supreme Court in
 
 Kelo
 
 , that "a taking or damaging of private property is not for public use if the primary use is for private gain, private benefit, private enterprise, increasing jobs, increasing tax revenue, or economic development, except for the elimination of a public nuisance existing on the property." Va. Const. art. I, § 11. The amendment also expanded the definition of "just compensation" to be "no less than the value of the property taken, lost profits and lost access, and damages to the residue caused by the taking."
 
 Id
 
 .
 

 While the amendment also explicitly states that the right to "private property" is "fundamental," nowhere does the amended language purport to modify existing property rights. It certainly does not abrogate the extensive common law privileges catalogued by the Restatement and recognized in Virginia statutory law. In other words, the amendment did not add any sticks to Palmer's bundle of property rights that did not already exist. It primarily, in response to
 
 Kelo
 
 , limited the parameters within which eminent domain may be exercised to affect these rights and expanded the compensation to be paid.
 

 III. Conclusion
 

 The unambiguous language of Code § 56-49.01 establishes the General Assembly's intent that the entry-for-survey privilege be available to foreign natural gas companies that do business within the Commonwealth. Additionally, Palmer's fundamental property rights do not include the right to exclude ACP in the present case. Accordingly, we affirm the circuit court's judgment.
 

 Affirmed.
 

 Palmer has thereby waived any argument relating to the trial court's rulings on the first two contentions of her demurrer-namely, that Code § 56-49.01 effects "a taking or damaging of private property for private use" and authorizes "a taking or damaging ... without just compensation." Therefore, this opinion does not address the relationship between Code § 56-49.01 and the public use and just compensation requirements of the takings clause.
 

 Alabama,
 
 Ala. Code § 18
 
 -1A-50 ; Alaska,
 
 Alaska Stat. Ann. § 09.55.280
 
 ; Arizona,
 
 Ariz. Rev. Stat. Ann. § 12-1115
 
 ; Arkansas,
 
 Ark. Code Ann. § 18-15-1302
 
 ; California,
 
 Cal. Civ. Proc. Code § 1245.010
 
 ; Colorado,
 
 Colo. Rev. Stat. Ann. §§ 18-4-515
 
 and 37-3-113 ; Connecticut,
 
 Conn. Gen. Stat. Ann. § 48-13
 
 ; Delaware, Del. Code Ann. tit. 2 § 704 ; Florida,
 
 Fla. Stat. Ann. § 163.370
 
 ; Georgia,
 
 Ga. Code Ann. § 22-3-86
 
 (c) and (d) ; Hawaii,
 
 Haw. Rev. Stat. § 101-8
 
 ; Idaho,
 
 Idaho Code Ann. § 7-705
 
 ; Illinois, 70 Ill. Comp. Stat. Ann. 5/22.3 ; Indiana,
 
 Ind. Code Ann. § 32-24-1-3
 
 ; Iowa,
 
 Iowa Code Ann. § 314.9
 
 ; Kansas,
 
 Kan. Stat. Ann. § 26-512
 
 ; Kentucky, Ky. Rev. Stat. Ann. § 175B.050 ; Louisiana, La. Rev. Stat. Ann. § 48:217 ; Maine, Me. Rev. Stat. Ann. tit. 32 § 18231 ; Maryland, Md. Code Ann. Real Prop. § 12-111 ; Massachusetts, Mass. Gen. Laws Ann. ch. 164 § 72A ; Michigan,
 
 Mich. Comp. Laws Ann. § 213.54
 
 ; Minnesota,
 
 Minn. Stat. Ann. § 117.041
 
 ; Mississippi,
 
 Miss. Code Ann. § 11-27-39
 
 ; Missouri,
 
 Mo. Ann. Stat. § 99.420
 
 ; Montana,
 
 Mont. Code Ann. § 70-30-110
 
 ; Nebraska,
 
 Neb. Rev. Stat. Ann. § 15-229
 
 ; Nevada,
 
 Nev. Rev. Stat. Ann. § 37.050
 
 ; New Hampshire,
 
 N.H. Rev. Stat. Ann. § 371:2
 
 -a ; New Jersey,
 
 N.J. Stat. Ann. § 20:3-16
 
 ; New Mexico, N.M. Stat. Ann. § 42A-1-8 ; New York,
 
 N.Y. Em. Dom. Proc. Law § 404
 
 ; North Carolina, N.C. Gen. Stat. Ann. § 40A-11 ; North Dakota,
 
 N.D. Cent. Code Ann. § 32-15-06
 
 ; Ohio,
 
 Ohio Rev. Code Ann. § 163.03
 
 ; Oklahoma, Okla. Stat. Ann. tit. 11 § 22-114 ; Oregon,
 
 Or. Rev. Stat. Ann. § 35.220
 
 ; Pennsylvania, 26 Pa. Cons. Stat. Ann. § 309 ; Rhode Island, R.I. Gen. Laws Ann. § 24-12-9 ; South Carolina,
 
 S.C. Code Ann. § 28-2-70
 
 ; South Dakota,
 
 S.D. Codified Laws § 49-33-6
 
 ; Tennessee,
 
 Tenn. Code Ann. § 29-16-121
 
 ; Texas,
 
 Tex. Nat. Res. Code Ann. § 111.019
 
 ; Utah, Utah Code Ann. § 78B-6-506 ; Vermont,
 
 Vt. Stat. Ann. tit. 5, § 3518
 
 ; Virginia, Code §§ 25.1-203, 56-49, and 56-49.01 ; Washington,
 
 Wash. Rev. Code Ann. § 47.01-170
 
 ; West Virginia, W.
 
 Va. Code Ann. § 54-1-3
 
 ; Wisconsin,
 
 Wis. Stat. Ann. § 182.38
 
 ; Wyoming,
 
 Wyo. Stat. Ann. § 1-26-506
 
 .