**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1863**

———————

D.A. REALESTATE INVESTMENT, LLC, an inactive Virginia limited liability
company; DANNY FOX, an individual and active-duty servicemember and owner
of D.A. Realestate Investment, LLC,

                Plaintiffs – Appellants,

and

REAL PROPERTY KNOWN AS TAX PARCEL NO. 49314300,

                Plaintiff,

        v.

CITY OF NOROLK, a municipal corporation,

                Defendant – Appellee.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at
Norfolk. Mark S. Davis, Chief District Judge. (2:21-cv-00653-MSD-LRL)

———————

Argued:  October 30, 2024                Decided:  January 16, 2025

———————

Before NIEMEYER, THACKER, and QUATTLEBAUM, Circuit Judges.

———————

Affirmed by published opinion. Judge Quattlebaum wrote the opinion in which Judge
Niemeyer and Judge Thacker joined.

———————

2

**ARGUED:** Joseph Very Sherman, POOLE BROOKE PLUMLEE PC, Virginia Beach, Virginia, for Appellants.  Adam Daniel Melita, CITY ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee.  **ON BRIEF:** William B. Newman, JOSEPH V. SHERMAN, P.C., Norfolk, Virginia, for Appellants.  Kristopher R. McClellan, City Attorney, CITY ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee.

QUATTLEBAUM, Circuit Judge:

In 1761, Massachusetts lawyer James Otis exclaimed "one of the most essential branches of English liberty is the freedom of one's house. A man's house is his castle." John Adams's Reconstruction of Otis's Speech in the *Writs of Assistance* Case, *in Collected Political Writings of James Otis* 12–13 (Richard Samuelson, ed. 2015). American law has embraced that principle since our nation's founding. U.S. Const. amend. V. But we have also long recognized that "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community." *Mugler v. Kansas*, 123 U.S. 623, 665 (1887). These values collide when private property creates a public nuisance.

When this collision occurs in Virginia, the government has two options. It can abate a public nuisance without paying compensation. Or it can exercise its right of eminent domain based on the public use of blight elimination. In the latter situation, the government may acquire title to the property, but it must pay the owner just compensation.

Here, the City of Norfolk determined that property owned by Danny W. Fox was unsafe and uninhabitable, and thus a public nuisance. So, after repeatedly notifying Fox over the course of several years that his property violated the statewide building code, the city abated the nuisance by demolishing the house on the property. In response, Fox sued

3

the city asserting, among other claims, an inverse condemnation claim under Virgina law.[1] He disagreed with the city's nuisance determination, alleging the property was simply in need of certain repairs. He also claimed that determination was a pretext for the city to increase its tax base.

The district court granted summary judgment for the city. It held that whether or not the house was a public nuisance, Fox's inverse condemnation claim failed. The court also held the record contained no evidence creating a genuine dispute of material fact on Fox's claim that the city demolished the house as a pretext for increasing its tax base.

On appeal, Fox argues that the nuisance and pretext questions can only be answered by a jury. We disagree. If the property was a public nuisance, the city had the authority to abate the nuisance without paying compensation. If the property was not a nuisance, Fox cannot show a danger to health and safety which, in this case, is critical to the public use requirement of an inverse condemnation claim. That doesn't mean a property owner has no recourse if the government wrongfully declares a nuisance and demolishes his property. Other claims exist. Indeed, Fox sought to bring one—a due process claim under the United States Constitution. Unfortunately for Fox, the district court held that the statute of limitations has run on his due process claim, and Fox did not appeal that determination.

---

[1] The suit was actually brought by Fox and D.A. Realestate Investment, LLC ("DARI"), which Fox solely owned and directed. But for convenience, we will collectively refer to the plaintiffs as Fox.

So, we affirm the district court on the issue he did appeal, the order granting summary judgment on Fox's inverse condemnation claim.

I.

A.

Fox, an active-duty serviceman with the United States Navy, bought 615 Waker Avenue in Norfolk in June 2015.[2] The Navy deployed Fox in the Fall of 2016. In December, the city inspected the house at 615 Walker Avenue. It found several Uniform Statewide Building Code violations which rendered the property "unsafe or unfit for human habitation or use . . . ." J.A. 963–66. As a result, the city mailed a notice of those violations to Fox at the P.O. box address on file with the city's tax assessor. But the notices were returned to sender. In addition to mailing notices, City Inspector Christina Jackson physically posted a notice of violations to the house itself in December 2016.

The city prepared another round of notices dated February 1, 2017. These notices described the property as "unsafe and uninhabitable." The record does not confirm whether the city ever mailed them. It does, however, confirm the city mailed a letter in May 2017 informing Fox that he had not made sufficient progress repairing the property. This letter,

---

[2] Because we are reviewing the district court's grant of summary judgment for the city, we present the facts, as we must, in the light most favorable to Fox. *See Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024).

like the other correspondence, was returned to sender. But Inspector Jackson had posted another notice of the code violations to the house in April 2017.[3]

In the Spring of 2017, Fox returned to the Norfolk area from his military deployment. He began visiting the house about once a month to mow the lawn, pick up trash and perform exterior maintenance. The record contains no express reference to whether Fox observed the code violation notices posted to the house at the time.

About a year later, in April 2018, the Navy deployed Fox again. Shortly before that deployment, someone drove a car into a portion of the house. The city photographed the physical damage from the collision and documented piles of debris as well as falling and missing interior ceilings and walls. Fox's deployment ended after about 30 days. When he returned to the property, Fox discovered the collision damage and did some work to repair it.

During this time, Fox saw a faded notice posted to the house. Although much of the notice's text was illegible, he identified Inspector Jackson's phone number and called her. Inspector Jackson told Fox that he needed to repair the house. Fox emailed her a general list of repairs that he planned to perform over the next three to four months. Inspector Jackson responded, explaining that she could only "give [him] an extension" if Fox provided a timeline of completion for repairs. J.A. 311. She also asked for paperwork

---

[3] The record contains photographs of both posted notices. J.A. 313–315. While difficult to read, they appear to contain content consistent with the notices mailed, and returned, around the same time as these postings.

6

demonstrating that Fox would be selling the property. And she concluded by stating "[p]lease clarify and resubmit your plans." J.A. 311. The record contains no evidence of Fox responding to Inspector Jackson.

In June 2018, the city prepared another notice of violation letter. Records do not clarify whether the city mailed this letter, but it was posted to the house. In addition to listing a series of code violations, the notice stated that the house "must be repaired or demolished and removed within 30 days of the date of this notice." J.A. 971. If Fox failed to repair the house, the notice continued, the city would demolish it pursuant to the building code. The notice also granted Fox an opportunity to appeal within the next fourteen days. Fox neither appealed nor responded to the notice.

In December 2018, the city demolished the house at 615 Walker Avenue. Fox learned of the demolition in late 2018. In early 2019, he spoke about it with Inspector Jackson and other city officials.

B.

On December 13, 2021—almost three years after the demolition—Fox sued the city. In an amended complaint, he alleged five causes of action: (1) a claim for due process violations of the Fifth and Fourteenth Amendments under 42 U.S.C. § 1983; (2) a claim for relief under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901–4043; (3) a claim for violation of the Fourth Amendment's protection against unreasonable searches and seizures under 42 U.S.C. § 1983; (4) a Fifth Amendment takings claim for just compensation under 42 U.S.C. § 1983; and (5) a state-law takings claim for just compensation under an inverse condemnation theory, Va. Const. art. I, § 11; Va. Code

7

Ann. § 8.01-187. All the claims sought damages for the demolition of the house. In later briefing, Fox claimed that the property was not a public nuisance, that the city pretextually demolished it as a nuisance to increase its tax base and that the city failed to properly notify him of the nuisance determination and the demolition.

After discovery, both Fox and the city moved for summary judgment. The district court granted the city's motion and denied Fox's. *See D.A. Realestate Inv., LLC v. City of Norfolk*, 2023 WL 2637382, at *1 (E.D. Va. Mar. 23, 2023) (*DARI I*). The court ruled that since Fox did not file his lawsuit until almost three years after the demotion of the house, the federal constitutional claims were barred by the applicable two-year statute of limitations. *Id.* at *4–6, 9–10. The court rejected Fox's argument that the SCRA required reopening the city's nuisance determination because the SCRA only offers relief from a "default judgment" in a "civil action or proceeding." *Id*. at *8. To address Fox's state-law takings claim, the court examined Virginia law authorizing non-compensable nuisance abatement under the police power. *Id.* at *12–14. It also explained that for compensable eminent domain, Virginia law identifies "elimination of blight" as a public use and partly defines "blighted property" as a "public nuisance." *See* Va. Code Ann. § 1-219.1(A)-(B). Thus, the court held that either the property was a nuisance, and the city properly abated it without compensation; or it was not a nuisance—and thus not blight. Either way, Fox could not demonstrate the city's public use, a necessary element of an inverse condemnation claim. *See id.* The court explained that Fox had other remedies for an improper abatement or an improper exercise of eminent domain. Fox could have brought a timely due process

8

claim or challenged the administrative nuisance determination. *Id.* at *15. But since he didn't do either, the court granted summary judgment for the city. *Id.*

Fox moved for reconsideration. He first argued that the city's suggested public use—elimination of blight—was a "pretext." *D.A. Realestate Inv., LLC v. City of Norfolk*, 2023 WL 5347305, at *2 (E.D. Va. Aug. 16, 2023) (*DARI II*); *see* Va. Code Ann. § 1-219.1(E). The court rejected the argument because if the property was not an actual nuisance, Fox failed to show that the taking was for public use—an essential element of his inverse condemnation claim. *DARI II*, 2023 WL 5347305, at *4. And the court held that Fox presented no triable question of fact; he merely speculated that the city was taking property for unauthorized motives. *Id.* Fox next argued that the grant of summary judgment deprived him of a right to try the state inverse condemnation claim before a jury. *Id.* at *5. Because Fox never raised this theory at the summary judgment stage, the court declined to consider it. *Id.* So, the district court denied Fox's motion. *Id*. at *5–6.

Fox timely appealed.[4] However, he did not appeal the district court's dismissal of the federal constitutional claims. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (finding an argument waived when a party failed to present it in its opening brief); Fed. R. App. P. 28(a)(8)(A). Eliminating any question about this, Fox stated

---

[4] The district court exercised jurisdiction over the federal claims under 28 U.S.C. § 1331 and the state law claims under 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. And we review the summary judgment grant *de novo*, applying "the same standard that the district court was required by law to apply . . . ." *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

in his opening brief that the federal constitutional claims are "[n]ot subject to this appeal." Fox Br. at 11 n.4.[5] Likewise, he abandoned any appeal of the district court's SCRA ruling by failing to raise such contentions in his opening brief. *See Grayson O Co.*, 856 F.3d at 316. Fox's Statement of Issues does not mention the SCRA, and his opening brief only obliquely references the district court's SCRA ruling once. This passing shot does not preserve the SCRA issue for appeal. *Id.* [6] Thus, the only issue before us is whether Fox showed any genuine dispute of material fact related to his Virginia inverse condemnation claim.

---

[5] Even if Fox had appealed these claims, precedent directs us to affirm the district court's conclusion that they are time-barred. Section 1983 lacks its own statute of limitations, so courts borrow the limitations period "from the most analogous state-law cause of action." *See Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014). "For § 1983 suits, that cause of action is a personal-injury suit." *Id.*; *see Wallace v. Kato*, 549 U.S. 384, 387 (2007). And Virginia has a two-year limitations period for personal injury suits. Va. Code Ann. § 8.01-243(A). Fox learned of the house's demolition in late 2018 and contacted the city about it in early 2019. He filed suit in December 2021, almost three years later.

[6] For servicemembers "to devote their entire energy to the defense needs of the Nation," the SCRA "provide[s] for [] temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. § 3902; *see DARI I*, 2023 WL 2637382, at *7. We agree with the district court's conclusion that no "default judgment" within the meaning of § 3931 was entered against Fox. *Id.* at *8; *see Fodge v. Trustmark Nat'l Bank*, 945 F.3d 880, 882 n.1 (5th Cir. 2019). The city's nuisance determination was not a "civil action or proceeding" resulting in a default judgment. *See DARI I*, 2023 WL 2637382, at *8. And § 4042's private right of action simply authorizes a suit when another provision of the SCRA is violated. *Id.* So even if not abandoned, we would affirm the district court's denial of SCRA relief.

II.

The district court properly granted summary judgment on Fox's Virginia inverse condemnation claim. We explain our decision by first reviewing Virginia's eminent domain and police powers and then describing why Fox failed to show a genuine dispute of material fact.

A.

"Eminent domain is the power of the government to take property for public use without the consent of the owner." *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 487 (2021). Like the United States Constitution, Virginia's Constitution requires the government to pay "just compensation" when it exercises eminent domain authority to take property. Va. Const. art. 1, § 11; *see AGCS Marine Ins. Co. v. Arlington Cnty.*, 800 S.E.2d 159, 162 (Va. 2017). Virginia law also restricts the use of eminent domain to "public use" takings. *See AGCS*, 800 S.E.2d at 164 ("The power of eminent domain can never be exercised 'except for public use,' . . . .").

In *Kelo v. City of New London*, the Supreme Court concluded that, for purposes of federal law, private development could, under certain circumstances, constitute a "public use." 545 U.S. 469, 483–84 (2005). After this holding, many states, including Virgnia, responded by defining "public use" more narrowly under state law. In 2007, the Virginia General Assembly enacted Va. Code Ann. § 1-219.1, which provides an exclusive list of six "public uses." *Id.* § 1-219.1(A). Virginia voters then enacted a 2012 Constitutional Amendment that incorporated § 1-219.1's central concepts. *See* Va. Const. art. I, § 11, cl.

11

3. Following these adjustments, Virginia law only permits the exercise of eminent domain for defined public uses.

If a government takes property *without* condemnation proceedings or just compensation, a property owner can bring an "inverse condemnation" action for just compensation. *See United States v. Clarke*, 445 U.S. 253, 257 (1980). Virginia law permits inverse condemnation actions under the state constitution and a separate statutory provision. Va. Const. art. I, § 11; Va. Code Ann. § 8.01-187; *see Kitchen v. City of Newport News*, 657 S.E.2d 132, 141–42 (Va. 2008). To succeed, a claimant must establish that (1) he owns private property; (2) a condemning authority has taken or damaged the property; (3) "the taking or damaging was for 'public use'"; and (4) "[t]he . . . condemning authority failed to pay just compensation." *Close v. City of Norfolk*, 82 Va. Cir. 636, at \*4 (Va. Cir. Ct. 2009); *see also Kitchen*, 657 S.E.2d at 136–38. Just as in a regular condemnation action, an inverse condemnation action "permits recovery only when property is taken or damaged *for public use*." *AGCS*, 800 S.E.2d at 163 (internal quotation omitted).

A state may also restrain property rights under its police power. "[P]roperty in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community, and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491–92 (1987) (cleaned up). Virginia law has long recognized police power authority to abate a public nuisance without compensation. *See, e.g., Jeremy Imp. Co. v. Commonwealth*, 56 S.E. 224, 226 (Va. 1907) ("The abatement of such a nuisance for the public safety comes under the police power of

12

the state, and is not a taking of private property for a public use in the sense contemplated by the Constitution, for which compensation must be allowed."); *State Highway and Transp. Comm'r v. Linsly*, 290 S.E.2d 834, 837 (Va. 1982) (similar). Said another way, nuisance abatement under the police power does not trigger a constitutional right to just compensation. *See Stickley v. Givens*, 11 S.E.2d 631, 638 (Va. 1940).

B.

With these principles in mind, we address Fox's two related challenges to the district court's grant of summary judgment for the city on the inverse condemnation claim. First, he argues that a jury must decide whether the house at 615 Walker Avenue constituted a nuisance. Second, he argues that a jury must decide whether the city acted pretextually in claiming that it demolished the house to eliminate blight or abate a nuisance.

Beginning with whether a jury must decide if the house constituted a nuisance, Fox is wrong for two reasons. First off, Fox never appealed the city's determination that the house constituted a nuisance. That failure to exhaust administrative remedies bars him from challenging the nuisance determination thereafter. *See Lee v. City of Norfolk*, 706 S.E.2d 330, 337–38 (Va. 2011).

Second, aside from his exhaustion problem, whether Fox's property was a nuisance under Virginia law is not a material issue in this case. Fox's claim fails whether or not the house was a nuisance. What if the house was a nuisance? Then the city properly abated it without compensation under its police power. *See Stickley*, 11 S.E.2d at 638; *Lee*, 706 S.E.2d at 338. In that situation, Fox cannot sustain an inverse condemnation claim because the city never "took" property in the eminent domain sense. *See Lee*, 706 S.E.2d at 338.

13

On the other hand, what if, as Fox insists, the house was not a nuisance? Fox still cannot sustain an inverse condemnation claim because he cannot demonstrate the essential element of the city's "public use." *See AGCS*, 800 S.E.2d at 163. Section 1-219.1(A) contains an exclusive list of six "public uses," only one of which—the elimination of blighted property—is potentially applicable here. According to the statute, "[b]lighted property means any property" (1) "that endangers the public health or safety"; and (2) is "a public nuisance" or a structure "beyond repair or unfit for human . . . use." Va. Code Ann. § 1-219.1(B). And Virginia defines a nuisance as an unsafe or dangerous structure "which constitute[s] a menace to the health and safety of the occupants thereof or the public." *Id.* § 15.2-900.[7]

Both "blighted property" and "public nuisance" require property to endanger public health or safety.[8] *See id.* §§ 1-219.1(B); 15.2-900. As a result, if Fox is right that the house posed no danger to public health or safety, he's correct that it is not a nuisance under Virginia law. But for the same reason, it did not constitute blight. *See id.* § 1-219.1(B). And since eliminating blight is the only potentially applicable public use here, Fox cannot show

---

[7] Virginia common law has a similar definition. Under it, a public nuisance "affect[s] injuriously, some thing, or right, in which the community, as a body politic, have a common interest . . . ." *Commonwealth v. Webb*, 27 Va. (6 Rand.) 726, 727 (Va. 1828).

[8] Why then would a city ever exercise eminent domain—where it must pay just compensation—when it could abate a nuisance without that financial obligation? Under eminent domain, the city can acquire title to the property. If a city wants to take title to blighted property for some public redevelopment, it must proceed under its eminent domain authority. And if it fails to pay just compensation, that taking will serve as the basis of an inverse condemnation claim in Virginia.

14

the "public use" element of an inverse condemnation claim. *See AGCS*, 800 S.E.2d at 163 ("Inverse condemnation permits recovery only when property is taken or damaged *for public use*." (internal quotation omitted)).[9] In sum, whether the house constituted a nuisance is immaterial—Fox's inverse condemnation claim fails whether the answer is yes or no.[10]

Fox's second challenge to the district court's order fares no better. He argues that a jury must resolve whether the city pretextually stated a purpose of blight elimination or nuisance abatement. And it is true that § 1-219.1(E) authorizes a property owner to argue— as a defense "[d]uring condemnation proceedings"—that "the stated public use is a pretext for an unauthorized use . . . ." That's because, as we have already said, eminent domain

---

[9] Despite this overlap between blight and nuisance, the state can still abate a public nuisance without paying compensation. *See Lee*, 706 S.E.2d at 338 ("The law is well settled that the abatement of a nuisance by a public body is not a compensable taking."); *Palmer v. Atl. Coast Pipeline, LLC*, 801 S.E.2d 414, 419–20 (Va. 2017) (clarifying that the 2012 Constitutional Amendment limits "the parameters within which eminent domain may be exercised" but "does not abrogate the extensive common law privileges [including an officer's ability to abate public nuisances] catalogued by the Restatement and recognized in Virginia statutory law").

[10] Fox argues that a nuisance abatement may still become a compensable taking by going "too far." When reviewing a Fifth Amendment takings claim, we recently stated that "Government actions taken pursuant to the police power are not per se exempt from the Takings Clause . . . ." *Yawn v. Dorchester Cnty.*, 1 F.4th 191, 195 (4th Cir. 2021). Even so, *Yawn* did not address nuisance abatement of derelict property. *See id.* at 195–96 (concluding a county's spraying of pesticides on Zika-infected mosquitoes was not a foreseeable or intentional taking of Yawn's bees). Nor did it address Virginia takings law, which emphasizes that "abatement of a public nuisance" does not require "any compensation to the owner of the property which creates the nuisance." *Stickley*, 11 S.E.2d at 638.

15

can only be exercised for public use under Virginia law. *See AGCS*, 800 S.E.2d at 163–64. So if, as Fox argues, the city wrongfully took the property for purposes other than public use, it would be a wrongful exercise of eminent domain. But inverse condemnation is not an available remedy for such wrongful conduct because an essential element of an inverse condemnation claim is the taking of property for public use. Virginia law is clear—"[t]ortious or wrongful conduct by a government official . . . can never be a sufficient ground, in itself, for an inverse condemnation award." *Id.* (internal quotation omitted).[11]

That doesn't mean Fox had no remedy for what he claims is the city's wrongful conduct. Fox had several routes to pursue his pretext argument. He could have appealed the city's nuisance determination to an administrative board. *See DARI II*, 2023 WL 5347305, at *4; *Lee*, 706 S.E.2d at 337–38. Or he could have brought a timely § 1983 due process claim for an unlawful taking. *See Chi., B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 234–35 (1897); *see also Wheeler v. City of Pleasant Grove*, 833 F.2d 267, 270 n.3

---

[11] In a Rule 28(j) letter, Fox argues that a recent Federal Circuit decision supports his unlawful taking argument. *See Darby Dev. Co. v. United States*, 112 F.4th 1017 (Fed. Cir. 2024). There, landlords filed a federal Tucker Act claim against the federal government for physically taking their rental properties through a COVID-era eviction moratorium. *Id.* at 1022. *Darby* found the moratorium "authorized" in the takings sense— the government agent's action was "chargeable to the government"—even if the moratorium was unlawfully issued. *Id.* at 1027. *Darby* does not apply to Fox's state-law inverse condemnation claim. Virginia law has "consistently adhered to the view that the eminent domain provisions in the Virginia Constitution have no application to tortious or unlawful conduct . . . ." *State Highway and Transp. Comm'r of Va. v. Lanier Farm, Inc.*, 357 S.E.2d 531, 534 (Va. 1987). "The negligent acts of public officials or agents . . . cannot be regarded as acts of the government itself . . . ." *Eriksen v. Anderson*, 79 S.E.2d 597, 600 (Va. 1954). *Darby* does not supplant those clear pronouncements from the Supreme Court of Virginia.

16

(11th Cir. 1987).[12] Unfortunately for him, Fox did neither. Instead, he brought an inverse condemnation claim that requires a showing of "public use." So, to the extent Fox now lacks a remedy, it is not because Virginia law is harsh; it is because he failed to timely pursue the available remedies.

Last, Fox lobs only conclusory allegations about pretext. According to Fox, Norfolk is out of land after almost 300 years of development and is therefore scheming to redevelop private property for tax revenue. But Fox offers no evidence to support this argument. A "genuine" dispute of fact exists at summary judgment if "the evidence presented would allow a reasonable factfinder to find for the nonmovant." *Bhattacharya*, 93 F.4th at 686. The dearth of any pretext evidence prevents a reasonable factfinder from finding for Fox.[13]

---

[12] Without analyzing potential immunity defenses, he also could have sued the officer who took the property in tort. *See AGCS*, 800 S.E.2d at 164.

[13] Fox raises three other issues that require little attention. First, Fox contends a jury must assess the value of the house. But the compensation owed is material only if a plaintiff establishes a valid inverse condemnation claim, which Fox does not. Second, Fox argues that Virginia law provides a right to try an inverse condemnation action to a jury. Even if Fox did not forfeit this argument by raising it for the first time in his motion to reconsider, *see Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999), summary judgment does not infringe one's right to a jury trial, *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 221 n.12 (4th Cir. 1978). Finally, Fox argues that the 2012 Constitutional Amendment designated private property ownership as a "fundamental right," so strict scrutiny must apply. But even if Fox did not forfeit this issue by raising it for the first time in his reply brief—and he probably did—the Supreme Court of Virginia rejected a similar "fundamental rights" argument in *Palmer*, 801 S.E.2d at 420.

17

III.

For the reasons explained above, the district court court's order granting the city

summary judgment is

*AFFIRMED.*